NATIONAL BANK OF DETROIT v DEPARTMENT OF SOCIAL SERVICES

Docket No. 203240. Submitted June 2, 1999, at Grand Rapids. Decided
    March 28, 2000, at 9:00 A.M. Leave to appeal denied, 463 Mich __.

Mary G. Conrad lapsed into a coma while under medical care. A medi-
    cal malpractice action relating to her care was resolved with a
    structured settlement providing for monthly and annual payments.
    A trust was created for the benefit of Conrad and was funded with
    the structured-settlement payments. Conrad received Medicaid ben-
    efits until the Department of Social Services (now the Family Inde-
    pendence Agency) determined that her assets, i.e., the principal
    and income of the trust, came to exceed Medicaid eligibility limits.
    A hearing referee affirmed the department's decision. The Benzie
    Circuit Court, James M. Batzer, J., reversed and remanded for
    reconsideration of Medicaid eligibility, concluding that the trust
    cannot be considered when determining eligibility. The department
    appealed. Conrad died while the appeal was pending, and National
    Bank of Detroit, as personal representative of her estate, was sub-
    stituted in her place.

The Court of Appeals *held*:

1. 42 USC 1396a(k) governs whether a trust established on or
before August 10, 1993, like the trust at issue here, can be counted
among a Medicaid applicant's assets for purposes of Medicaid eligi-
bility. Under subsection 1396a(k), the availability of trust assets
(both principal and income) for Medicaid purposes requires scru-
tiny of the amount of discretion given to the trustee under the
terms of the trust. If the trustee has any discretion to expend trust
income or principal on behalf of the beneficiary, the full amount
that it could distribute is deemed an available asset of the Medicaid
client.

2. The circuit court erred in determining that the trust income
cannot be considered for purposes of determining Medicaid eligibil-
ity in this case. The provisions of the trust provide the trustee with
discretion over the expenditure of trust income for the satisfaction
of Conrad's special needs.

3. The circuit court did not err in determining that the monthly
payments into the trust from the structured settlement constituted
trust principal, not income. The trust document provides that the

trust is subject to Michigan trust law, and the monthly payments meet the definition of "principal" found in MCL 555.53(b); MSA 26.79(3)(b).

4. The circuit court erred in determining that the trust principal cannot be considered for purposes of determining Medicaid eligibility. Under the terms of the trust, the trustee possesses discretion to disburse trust principal.

Affirmed in part, reversed in part, and remanded.

GRIFFIN, P.J., concurring in part and dissenting in part, stated that the trust principal should not be considered part of Conrad's assets because the trust instrument did not confer discretion on the trustee to distribute the trust principal inasmuch as disbursement of principal was allowed under circumstances that could never arise in light of Conrad's comatose condition. The trust instrument granted the trustee discretion to distribute principal to Conrad for downpayment on a house, for engaging in business, or for payment for a wedding, honeymoon, or trip. The circuit court's decision regarding the trust principal should be affirmed.

SOCIAL SERVICES — MEDICAID — MEDICAID QUALIFYING TRUSTS.

Whether income from, and the principal of, a trust created on or before August 10, 1993, is part of a Medicaid applicant's assets for purposes of determining Medicaid eligibility depends on the amount of discretion given to the trustee under the terms of the trust; if the trustee has any discretion to expend trust income or principal on behalf of the beneficiary, the full amount that it could distribute will be deemed an available asset of the applicant (42 USC 1396a[k]).

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander Ploeg*), for the petitioner.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Erica Weiss Marsden*, Assistant Attorney General, for the respondent.

Before: GRIFFIN, P.J., and WILDER and R. J. DANHOF*, JJ.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

R. J. DANHOF, J.

Respondent, Department of Social Services,[1] appeals by leave granted from a circuit court order reversing in part a Department of Social Services Bureau of Administrative Hearings determination that Mary Gretchen Conrad (hereafter petitioner) was ineligible to receive Medicaid benefits. We affirm in part, reverse in part, and remand.

I

Petitioner was injured and rendered comatose on December 16, 1986, because of alleged medical malpractice. She was in her early twenties at the time and resided in a nursing home in Michigan until her death in January 1998.[2]

Petitioner's father brought a medical malpractice action on her behalf, and the case was ultimately settled in 1988. The structured settlement provided for minimum payments of $879.01 a month for a term of twenty years, with required payments of $38,669 a year during the first five years. Petitioner's father, as her court-appointed conservator, established an irrevocable trust on petitioner's behalf in November 1989.[3] The trust was funded by petitioner's medical malpractice settlement proceeds.

Thereafter, petitioner, through her representatives, applied for Medicaid benefits to pay for her medical

---

[1] The respondent has been renamed as the Family Independence Agency (FIA). MCL 400.1; MSA 16.401.

[2] A register's order of independent probate, issued by the Benzie County Probate Court, indicates that petitioner died intestate. National Bank of Detroit was appointed to be the decedent petitioner's independent personal representative.

[3] National Bank of Detroit is the trustee of the trust.

and nursing home care. However, in 1990, respondent denied petitioner's application, concluding that the trust was a "Medicaid Qualifying Trust" (MQT) (see subsequent discussion) with assets available to petitioner and thus "countable" for purposes of evaluating her eligibility for Medicaid benefits. Because the trust assets exceeded the monetary limit for Medicaid qualification, respondent found petitioner to be ineligible to receive benefits.

An administrative hearing ensued and, in January 1991, a decision was rendered by hearing referee C. David Jones, who concluded that although petitioner was the beneficiary of an MQT under then existing federal law, she was nonetheless immediately eligible to receive Medicaid benefits. He found, in pertinent part, that because the amount of the trust's principal was under $50,000 before December 1990, petitioner was ineligible for Medicaid benefits; under the terms of the trust, the trustee possessed discretion in that circumstance to invade the trust principal. He further determined, however, that petitioner's Medicaid ineligibility ended in December 1990 when additional settlement installment deposits were made to the trust. This conclusion was based on his finding that once the trust's principal exceeded $50,000, the trust principal was no longer available to petitioner by virtue of the trust's terms and conditions.

Hearing referee Jones' decision was not appealed, and petitioner subsequently received Medicaid benefits until September 1995, at which time she received notice that her benefits would end on October 10, 1995. The denial of benefits was premised on respondent's determination that despite hearing referee Jones' decision to the contrary, "the trust income pay-

able to the client to date . . . include[s] $879.01/mo income . . . and all interest and dividends paid on the trust principal (which was created by deposits of $38,669.30 per year for five years) since the trust creation." In this regard, respondent added together the total of all settlement deposits to the trust through July of 1995, then subtracted verified disbursements from the trust, and concluded that the remaining $170,962.98 constituted petitioner's total countable assets under the trust. Similarly, respondent also added the $879.01 monthly settlement amount to the nearly $1,400 in net income earned by the trust to conclude that the trust had a total countable monthly income of $2,272.63.

Petitioner once again challenged this denial of her Medicaid benefits. A second administrative hearing was held and in a decision dated February 14, 1996, hearing referee Terence Merrick concluded that the MQT designation still applied to the trust. However, he found that all the trust's assets (both principal and income) were "countable" and thus deemed available to petitioner; even the monthly payments to the trust to date, together with interest, dividends, and short-term capital gains, constituted "income" that the trustee had discretion under the trust document to distribute. He therefore concluded that all those funds were countable assets that exceeded the Medicaid eligibility limits.[4]

---

[4] In his hearing decision, referee Merrick noted: Department policy does not distinguish between principal or income as the source of the maximum payment that could be made from the trust. The criterion is the maximum payment that could be made from the trust to the claimant as a beneficiary of the trust if the trustee exercised his full discretion under the terms of the trust.

Petitioner appealed to the Benzie Circuit Court, and the court reversed in part hearing referee Merrick's decision. The court affirmed the finding that petitioner's trust is an MQT but held that (1) the monthly deposits of $879.01 from the settlement agreement were additions to the principal of the trust, not "income" subject to distribution under the trust document, (2) the trustee possessed no discretion under the trust instrument to expend principal or income, and (3) respondent may count neither principal nor income as assets when determining petitioner's Medicaid eligibility. The circuit court remanded the case to respondent "for a redetermination of the petitioner's eligibility for Medicaid, retroactive to the date of its denial of September 27, 1995, to exclude from the amount to be counted as petitioner's assets the monthly payments made to trust principal and trust income." Respondent now appeals.

II

Respondent argues on appeal that the trial court clearly erred in holding that the assets from petitioner's trust were not available resources for purposes of determining her Medicaid eligibility. Respondent contends that the trustee has "broad discretion" to distribute both income and principal under the trust document and, therefore, all the trust assets must be counted in determining petitioner's Medicaid eligibility, regardless of whether those assets are principal or income.

Factual findings of administrative agencies are reviewed initially to determine whether they are supported by competent, material, and substantial evidence on the whole record. *Ansell v Dep't of Com-*

*merce (On Remand)*, 222 Mich App 347, 354; 564 NW2d 519 (1997). A legal ruling by an administrative agency will be set aside "only if it violates the constitution or a statute or is affected by a 'substantial and material error of law.' MCL 24.306(1)(a), (f); MSA 3.560(206)(1)(a), (f)." *Id.* In this case, this Court is reviewing the circuit court's review of respondent's decision:

> [W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made. [*Boyd v Civil Service Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996).]

This Court in *Cook v Dep't of Social Services*, 225 Mich App 318, 320-323; 570 NW2d 684 (1997), recently reviewed the history of the applicable federal law regarding Medicaid eligibility:

> The Medicaid program, 42 USC 1396 *et seq.*, was established by Congress in 1965 as a cooperative federal-state program in which the federal government reimburses the state for a portion of the costs of medical care for needy individuals. *Ronney v Dep't of Social Services*, 210 Mich App 312, 315; 532 NW2d 910 (1995). The test for Medicaid eligibility is essentially a needs-based test, with coverage being denied if the applicant exceeds a ceiling in countable assets. *Id.* Generally, funds held in an irrevocable trust are not countable assets. *Id.* This general rule applied . . . in 1977.

In 1986, however, Congress amended the Medicaid statutes so that assets in certain trusts would be counted in determining whether a Medicaid applicant satisfied the maximum asset requirement. Relevant to this case was the addition of 42 USC 1396a(k), which defined an MQT and established the circumstances under which the assets of an MQT would be deemed countable in determining the grantor's Medicaid eligibility. . . .

In 1993, Congress again amended the provisions governing Medicaid qualification. In so doing, § 1396a(k) was deleted and the treatment of trusts for Medicaid qualification was moved to § 1396p(d). At that time, even stricter criteria were added regarding the treatment of trusts. However, Congress specifically provided that the amendments of § 1396p(d) concerning trust assets would not apply "with respect to trusts established on or before the date of the enactment of this Act," August 10, 1993. In light of this provision, it is undisputed that, in this case, the Cook trust is not governed by § 1396p(d). Instead, the issue in this case is whether trusts like the Cook trust, created before August 10, 1993, continue to be governed by the now deleted § 1396a(k).

\*     \*     \*

It seems clear that, when Congress subsequently amended the Medicaid qualification provisions to provide even more stringent requirements on grantors with trusts established after August 1993, it did not at the same time intend simply to abandon all qualification requirements for grantors with trusts created before 1993 and once again allow those persons to "divert[] scarce Federal and State resources from low-income elderly and disabled individuals." [HR Rep No 265, 99th Cong, 1st Sess, pt 1, at 72.] Rather, the only reasonable conclusion is that Congress intended the 1986 provisions regarding MQTs to continue to apply to trusts established before August 10, 1993.

42 USC 1396a(k), referenced in *Cook, supra*, provides in pertinent part:

(1) In the case of a medicaid qualifying trust (described in paragraph (2)), the amounts from the trust deemed available to a grantor, for purposes of subsection (a)(17), is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term "grantor" means the individual referred to in paragraph (2).

(2) For purposes of this subsection, a "medicaid qualifying trust" is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual.

(3) This subsection shall apply without regard to—

(A) whether or not the medicaid qualifying trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this title; or

(B) whether or not the discretion described in paragraph (2) is actually exercised.[5]

---

[5] Consistent with 42 USC 1396a(k), respondent's Program Eligibility Manual (PEM), Item 400, in effect at the time of both administrative hearings and the circuit court appeal, provided that the agency must count as available resources of the client "the maximum distributable amount" of an irrevocable MQT. The "maximum distributable amount" is defined as "the maximum amount that can be distributed to the beneficiary under the terms of the trust provided the trustee exercised his full discretion under the terms of the trust minus the amounts that are actually distributed from either the income or principal of the trust." PEM, Item 401, p 14, further provided:

The countable asset amount for each person for whom assets must be considered is:

The maximum payment that could be made from the trust (principal or income) to that person as a beneficiary of the trust if the trustee exercised his full discretion under the terms of the trust.

Minus actual payments made by the trust to or on behalf of the person.

Although the issue was contested in the tribunals below, the parties to this appeal do not now challenge the consistent conclusions of the hearing referees and the circuit court that petitioner's trust falls within the definition of an MQT even though the trust was established by the disabled Medicaid applicant through a conservator acting on her behalf. See, generally, *Ronney v Dep't of Social Services*, 210 Mich App 312, 318; 532 NW2d 910 (1995); cf. *In re Hertsberg Inter Vivos Trust*, 457 Mich 430; 578 NW2d 289 (1998). As such, the trust, established in 1989, is subject to the rules regarding determinations of eligibility for Medicaid set forth in 42 USC 1396a(k), *Cook, supra*, and to the corresponding policy issued by respondent pursuant to the statute.

The Michigan courts have not had occasion to apply 42 USC 1396a(k) in the present context. However, in *Cohen v Comm'r of the Division of Medical Assistance*, 423 Mass 399, 411-413; 668 NE2d 769 (1996), the court construed the federal statute and explained:

> The clause "under the terms of the trust," . . . nestles between the phrase "the maximum amount of payments that may be permitted" and "to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor." The clause is most naturally read to measure the maximum amount (principal or income) to be deemed available to the grantor, asking what is the greatest amount the trustees in any circumstances have discretion to disburse. The plaintiffs read the clause as not only measuring the maximum amount available to grantors but also as carrying forward to the determination of availability the circumstances in which that amount might be paid. But the clause does not say this, and making it say this is a less natural reading than the alternative. Once we have identified

the maximum amount trustees in any circumstances have discretion to pay, we then proceed to ask whether that amount is so large as to render the grantor ineligible.

\*     \*     \*

. . . [W]e interpret the statute to define what is an MQT. See 42 USC § 1396a(k)(2). And that is any trust established by a person (or that person's spouse) under which that person may receive any payments. This general definition is qualified only by the requirement that the trustees must be permitted to exercise some discretion—that is, *the conditions for distribution may not be completely fixed for all circumstances.* If there is an MQT, then subsection (1) of the MQT statute . . . tells us how much money is to be deemed to be available. That amount is the greatest amount that the trustees in any set of circumstances might have discretion to pay out to the beneficiary. Thus, *if there is a peppercorn of discretion,* then whatever is the most the beneficiary might under any state of affairs receive in the full exercise of that discretion is the amount that is counted as available for Medicaid eligibility. [Emphasis added.]

See also *In re Kindt,* 542 NW2d 391 (Minn App, 1996); *Williams v Kansas Dep't of Social & Rehabilitation Services,* 258 Kan 161; 899 P2d 452 (1995); *Miller v Ohio Dep't of Human Services,* 105 Ohio App 3d 539; 664 NE2d 619 (1995).

Thus, under this analysis of 42 USC 1396a(k), which we adopt as our own, the availability of trust assets (both principal and income) for Medicaid purposes requires scrutiny of the amount of discretion given to the trustee by the terms of the trust. If the trustee of an MQT has any discretion to expend trust income or principal on behalf of the beneficiary, the full amount that it could distribute is deemed an available asset of the Medicaid client. *Cohen, supra.*

There are several portions of petitioner's trust that address the trustee's discretion to distribute trust funds to the beneficiary. Section V of the trust document addresses the trustee's authority to distribute income and principal. Subsection a specifically governs distributions of income:

> (1) *Beneficiary's Governmental Assistance Eligibility.* So long as the beneficiary qualifies for, is eligible to receive, or enjoys governmental assistance programs or benefits, e.g., Medicare; Medicaid; SSI; the *Trustee may pay* to or apply for the benefit of Mary Gretchen Conrad, for her lifetime, *such amounts of income as the Trustee, in the Trustee's sole discretion may,* from time to time, *deem necessary* or advisable, *for the satisfaction of Mary Gretchen Conrad's special needs.* As used in this subparagraph (1), "special needs" refers to the requisites for maintaining the beneficiary's good health, safety and welfare, enrichment of life, including but not limited to, medical and dental expenses, motor vehicles, insurance therefor, clothing and equipment, travel, entertainment and programs of training and education, radios, record players, television sets, VCR's, camping, vacations, travel, athletic contests, movies, and money to purchase appropriate gifts for relatives, after taking into account all sources of governmental assistance then available to her. . . .
>
> (2) *Beneficiary's Governmental Assistance Non-Eligibility.* In the event that, from time to time, the beneficiary is disqualified from or ineligible to receive governmental assistance programs or benefits (examples of which are provided in subparagraph (a)(1) above), the *Trustee shall pay* to or apply for the benefit of Mary Gretchen Conrad, for her lifetime, *such amounts of the income as the Trustee, in the Trustee's sole discretion may, from time to time, deem necessary* or advisable *for the satisfaction of Mary Gretchen Conrad's special needs,* as described in subparagraph (a)(1) above, *as well as for her health, education, support or maintenance.* Included in the definition of health, education, support and maintenance for the pur-

poses of this subparagraph (2), the Trustee shall provide for
the cost of housing, food, transportation expenses, medical
expenses, spending money, and any other types of expenses
that the Trustee considers to be necessary for the enjoy-
ment and comfort of Mary Gretchen Conrad. [Emphasis
added.]

Subsection VII(i)(2)(ii), which applies during "the
minority or other legal disability of any beneficiary,"
provides in part:

[W]ith respect to such beneficiary if, in the Trustee's sole
discretion, such payments shall be more than sufficient to
provide for such beneficiary, all amounts which in the opin-
ion of the Trustee are not required for such purposes may
be withheld, and *any income so withheld shall be added to
the principal from which it was derived.*" [Emphasis
added.]

Subsection b of § V governs the distribution of
principal:

(1) *Beneficiary.* In addition to the payments of income to
the beneficiary, or her parents and siblings, as provided for
in paragraph (a) above, the *Trustee may, but shall not be
obligated to, in the Trustee's sole discretion,* pay such
amount or amounts from the principal of such Trust to the
beneficiary in order for her or her spouse *to purchase or
make a down payment on a home, to engage in business
either alone or in association with others* (if the Trustee
after consulting with the advisory panel, as identified
above, deems the proposed business to be suitable for the
beneficiary or her spouse and likely to succeed), *to pay for
a wedding or to take a honeymoon or other trip.* [Emphasis
added.]

Various other provisions in the trust document
allow the trustee to distribute principal to petitioner
for terminating the trust, but according to subsection

V(b)(1), such distributions may only be made if the trust corpus is less than $50,000.

The circuit court in this case held that the trustee possessed no discretion under the trust instrument to expend trust income on petitioner's behalf because of prohibitions in the trust itself and, hence, such income was not an available resource for Medicaid eligibility purposes. However, our evaluation of the terms of the trust, specifically subsections V(a)(1) and (2), leads us to conclude that the circuit court clearly erred in its finding with regard to trust income. As both of the hearing referees implicitly recognized, subsection V(a) grants more than a "peppercorn of discretion," *Cohen, supra* at 413, to distribute trust income under a variety of circumstances, i.e., for certain purposes associated with petitioner's special needs and before the income is incorporated in the principal of the trust, and where, as here, there had been a government determination that the trust assets were not shielded from consideration for governmental benefits.

The court in *Cohen* reached a similar conclusion when it construed comparable trust provisions. Although the trusts therein purported to limit the trustees' discretion to disburse funds in substitution of public entitlement benefits, *id.* 419-424, the court found that such limitations should be disregarded in an effort to determine "the greatest amount that the trustees in any set of circumstances might have discretion to pay out to the beneficiary." *Id.* at 413. In this case, because the trustee under subsection V(a) of the trust has discretion under numerous circumstances to distribute the income of the trust, albeit for petitioner's special needs, that income is a counta-

ble asset for purposes of Medicaid eligibility. Compare *Miller v Ibarra*, 746 F Supp 19, 34 (D Colo, 1990) ("Under the terms of the trusts at issue, assuming full exercise of discretion by the trustees, they cannot distribute more than an amount $20.00 less than the Medicaid income eligibility level."). Thus, we hold that the trust income may be included in the Medicaid qualifying trust formula for determining eligibility. In other words, to arrive at the countable asset amount for determining Medicaid eligibility, actual expenditures on behalf of petitioner should be deducted from the maximum payment from income that could have been made by the trustee under subsection V(a). PEM, Items 400, 401.

However, what is to be included as "income" is a disputed issue in this case. Respondent maintains that the monthly installment payments to the trust made pursuant to the malpractice settlement agreement are countable as income in the determination of Medicaid eligibility. Conversely, the circuit court held, and petitioner concurs, that the $879.01 monthly personal injury settlement amounts received by the trustee are additions to trust principal which may not be counted toward petitioner's Medicaid eligibility. The court also found that the trustee had no discretion *not* to add the monthly installment payments to the principal of the trust.

We conclude that the trial court did not clearly err in finding the installment payments to be principal rather than income. As previously recognized, 42 USC 1396a(k)(1) provides that the maximum amount of payments that may be permitted to the grantor is to be determined "under the terms of the trust." Here,

§ IX of the trust document specifically provides that Michigan trust law governs the construction of its terms. The Revised Uniform Principal and Income Act, MCL 555.53(a); MSA 26.79(3)(a), defines "income" as "the return in money or property derived from the use of principal . . . ." "Principal" is defined as

> the property which has been set aside by the owner or the person legally empowered so that it is held in trust eventually to be delivered to a remainderman while the return or use of the principal is in the meantime taken or received by or held for accumulation for an income beneficiary. [MCL 555.53(b); MSA 26.79(3)(b)].

Respondent maintained at the administrative hearing that even though its policy was to treat lump sum payments as principal, installment payments were countable as income. Respondent offered no logical reason for treating installment payments differently than lump sum payments, and no written law or policy was cited as support for this finding. Obviously, the settlement payments used to fund the trust itself do not constitute money or property derived from the use of the trust principal, MCL 555.53(a); MSA 26.79(3)(a); rather, the monthly payments were directed to the trust corpus itself. We conclude that the trial court did not clearly err in finding the installment payments to be principal rather than income.

However, we find that the circuit court clearly erred in concluding that the trustee possesses no discretion under the trust instrument to expend amounts of trust principal. Subsection V(b)(1) of the trust, quoted earlier, authorizes the trustee, in its sole discretion, to pay unlimited amounts to petitioner from

trust principal for specified purposes. The court in *Cohen, supra* at 413, stated in this connection:

> If there is an MQT, then [42 USC 1396a(k)(1)] tells us how much money is to be deemed to be available. That amount is the greatest amount that the trustees in any set of circumstances might have discretion to pay out to the beneficiary. Thus, if there is a peppercorn of discretion, then whatever is the most the beneficiary might under any state of affairs receive in the full exercise of that discretion is the amount that is counted as available for Medicaid eligibility.

Significantly, the court rejected the argument that the Medicaid statute carries "forward to the determination of availability the circumstances in which that amount might be paid." *Id.* at 411.

The facts that in the case at bar the trustee's ability to expend trust principal is confined to the purposes set forth in subsection V(b)(1) and that the trustee did not actually distribute trust principal to petitioner before her death are not controlling. It is clear that the trustee possesses at least "a peppercorn of discretion" to disburse trust principal, and therefore "whatever is the most the beneficiary *might under any state of affairs receive in the full exercise of that discretion* is the amount that is counted as available for Medicaid eligibility." *Id.*, at 413 (emphasis added). The trial court clearly erred in holding that trust principal is not available as a countable asset for purposes of Medicaid eligibility.

In lieu of our disposition on the merits of the matter, it is unnecessary to decide the alternative argument of collateral estoppel raised in this appeal.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

WILDER, J., concurred.

GRIFFIN, P.J. (*concurring in part and dissenting in part*). I agree with the majority that petitioner's trust income may be included in the Medicaid qualifying trust formula for determining eligibility. Further, I agree that the lower court did not clearly err in finding the installment payments to be principal rather than income. However, I disagree and respectfully dissent from the majority's reversal of the circuit court's decision regarding the trust principal.

Contrary to the majority, I find no clear error in the circuit court's conclusion that the trustee possesses no discretion under the trust instrument to expend amounts of trust principal. While the trustee has discretion to distribute principal to petitioner for the specific purposes of buying a home, a business, or a honeymoon or wedding trip, the trustee is not allowed to distribute principal to petitioner for any other purpose, at least as long as the trust corpus exceeds $50,000. Similarly, the termination provisions of the trust do not provide the trustee with the requisite discretion that would allow the principal to be considered a countable asset for Medicaid purposes. One termination clause allows the trustee to distribute trust principal only when the principal value is $50,000 or less. At the time of the pertinent proceedings below, the principal amount far exceeded $50,000; therefore, the limited discretion provided to the trustee was unavailable. Although the second termination provision of the trust grants the trustee discretion to distribute both principal and income to petitioner, that discretion is only available after all appeals of the ineligibility determination have been exhausted and consequently was inapplicable to the

present circumstances. As noted by the original hearing referee, C. David Jones:

> I do not believe the trustee has the discretion to distribute any of the principal under this section. Under the current circumstances, such distribution would be an unreasonable abuse of discretion. Since claimant is comatose and needs care in a nursing home, she is not able to take a trip, to engage in a business, alone or in association with others, or to live in a private home. The trust contemplates claimant's engaging in business herself not through her conservator. Since there is no indication claimant is engaged, she has no need for a wedding or a honeymoon.

Pursuant to the analysis in *Cohen v Comm'r of the Division of Medical Assistance*, 423 Mass 399, 411-412; 668 NE2d 769 (Mass, 1996), the circumstances under which the principal can be distributed are "completely fixed for all circumstances," and petitioner's comatose state and subsequent death eliminated even the remote possibility of any of these circumstances occurring.

In *Kokoska v Comm'r of the Division of Medical Assistance*, the most closely analogous of the four separate actions decided sub nom *Cohen, supra* at 420-424, the court determined that the full amount of the interest and principal of the trust established for the benefit of the petitioner who, like petitioner in the instant case, was rendered comatose as a result of medical malpractice, was available when determining eligibility for Medicaid benefits. The court, while noting that "Kokoska's situation is in some ways different from and more sympathetic than that of the other plaintiffs," *Cohen, supra* at 423, nonetheless concluded:

The terms of the trust give the trustee discretion to pay both income and principal to the beneficiary for a wide and generally defined range of purposes, limiting that discretion only to assure Kokoska's eligibility for public assistance in spite of the resources otherwise available to her. Accordingly, . . . the measure of the trustee's discretion is the full amount of the trust, both principal and income, and that is the amount deemed available to her for purposes of determining her Medicaid eligibility.

\*     \*     \*

. . . [A]lthough the Kokoska trust limits the trustee's discretion, the MQT statute as we interpret it requires that the division disregard such a limitation when assessing availability. The statute asks only what the maximum amount of funds available to the beneficiary are in any circumstances pursuant to the exercise of the trustee's discretion. That amount, as we have seen, is the full amount of the interest and principal of the trust. [*Id.* at 421-424.]

By contrast, the instant trust narrowly prescribes the trustee's discretion to disperse the trust principal, limiting that discretion to situations that, by virtue of petitioner's comatose condition, realistically would never arise. Given that petitioner's condition was obviously known and contemplated when these trust provisions were created, I will not ignore these circumstances and view the trust instrument in a vacuum. To do so would stretch *Cohen* beyond its rationale. A more reasonable interpretation and application of *Cohen* to the present case is the conclusion that the trust instrument does not confer discretion on the trustee to distribute the trust principal to the beneficiary, thereby making the principal unavailable for Medicaid eligibility purposes.

In sum, because the terms of the trust in question do not give the trustee discretion to distribute the

trust principal, the trial court did not clearly err in holding the principal is not available as a countable asset for purposes of Medicaid eligibility. 42 USC 1396a(k); *Cohen, supra.* However, the trust instrument does grant the trustee more latitude with respect to expenditures of income. Therefore, I conclude that the trial court clearly erred to the extent it included trust income within the scope of unreachable assets. Whether the income of the trust exceeded the monetary limit for Medicaid eligibility during the applicable period is a question of fact that must be determined on remand by the circuit court.

I would affirm in part, reverse in part, and remand for further proceedings.