**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 4 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LORY ANN RAMEY,

      Plaintiff-Appellee,

RENEE M. FARMER,

      Plaintiff-Cross-Appellant,

SHERRY S. SHUPE,

      Intervenor-Appellee,

v.

KAREN REINERTSON, in her
official capacity as Executive Director
of the Colorado Department of Health
Care Policy and Financing,

      Defendant-Appellant-Cross-
Appellee.

Nos. 00-1121 & 00-1143

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 98-WM-1261)**

Ann M. Hause, Assistant Attorney General, Denver, Colorado (Ken Salazar,
Attorney General, with her on the briefs), for Appellant.

R. Eric Solem, Solem, Mack & Steinhoff, P.C., Denver, Colorado (David F.
Steinhoff, Solem, Mack & Steinhoff, P.C., Denver, Colorado; Mary Helen Miller,
Boulder, Colorado, with him on the briefs), for Appellees and Cross-Appellant.

Before **HENRY** [*] and **PORFILIO** , Circuit Judges, and **OWEN,** District Judge. [**]

**HENRY** , Circuit Judge.

This appeal requires our examination of the Social Security Act ("Act"), in particular those provisions relating to the Medicaid program, established in 1965, see 42 U.S.C. § 1396a. We recognize, as have other courts, that "[t]he Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act 'almost unintelligible to the uninitiated.'" Schweiker v. Gray Panthers, 453 U.S. 34, 43 (1981) (hereinafter Gray Panthers) (quoting Friedman v. Berger, 547 F.2d 724, 727 n.7 (2d Cir. 1976)).

Before us are essentially two issues to determine: (1) whether a particular section of the Act, 42 U.S.C. § 1396a(k) (1986), though repealed effective August 10, 1993, still applies to trusts established before that date and (2) whether recipients of Supplemental Security Income for the Aged, Blind and Disabled ("SSI") are also entitled to Medicaid benefits under Colorado's medical assistance

---

[*] Judge Henry vouched in for oral arguments.

[**] The Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

program.  We have jurisdiction pursuant to 28 U.S.C. § 1331 (2001) and, for the reasons stated below, affirm.

# I.  BACKGROUND

For purposes of clarity, we provide first a brief discussion of the relevant provisions of the Act, namely the Medicaid program and the SSI program.

## A.  Medicaid Program

The Medical Assistance program, commonly known as  "Medicaid," "is a cooperative federal-state venture designed to afford medical assistance to persons whose income and resources are insufficient to meet the financial demands of necessary care and services."  New Mexico Dep't of Human Servs. v. Department of Health & Human Servs. Health Care Fin. Admin., 4 F.3d 882, 883 (10th Cir. 1993).  Under this federal program administered by the states, participating states receive partial reimbursement for the costs of providing medical services as well as reimbursement for the costs of administering the program.

> Each participating State develops a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance.  An individual is entitled to Medicaid if he fulfills the criteria established by the State in which he lives.  *State Medicaid plans must comply with requirements imposed both by the Act itself and by the Secretary of Health and Human Services* ["Secretary of HHS"] . . . .

Gray Panthers, 453 U.S. at 36-37 (internal quotation marks and citations omitted) (emphasis added). Participation in the program is optional, see Colorado Health Care Ass'n v. Colorado Dep't of Social Servs., 842 F.2d 1158, 1164 (10th Cir. 1988) ("While participation in the Medicaid program is optional, once a State elects to participate, it must comply with federal statutory requirements."), and Colorado is currently a participant in the Medicaid program. See Hern v. Beye, 57 F.3d 906, 913 (10th Cir. 1995) (observing that "because Colorado has decided to participate and accept federal Medicaid funds, it must do so on the terms established by Congress").

B. SSI Program

Prior to 1972, the SSI program did not exist. Instead, the Act provided for four welfare programs known as Old Age Assistance, Aid to the Blind, Aid to the Permanently and Totally Disabled, and Aid to Families with Dependent Children ("AFDC"). See Schweiker v. Hogan, 457 U.S. 569, 573 n.2 (1982). In 1972, Congress attempted to streamline these various programs, combining the first three into a new program known as Supplemental Security Income for the Aged, Blind and Disabled. See Gray Panthers, 453 U.S. at 38 (noting that "Congress replaced three of the four categorical assistance programs with [SSI]"). The purpose of the newly created program was to afford cash assistance for basic necessities (but not medical expenses) to disabled persons who met the resource

eligibility requirements.  See Miller v. Ibarra, 746 F. Supp. 19, 23 (D. Colo. 1990).

The creation of SSI, however, engendered concern because "Congress imposed the requirement that all recipients [of] SSI . . . were entitled to Medicaid."  Gray Panthers, 453 U.S. at 38. This

> portended increased Medicaid obligations for some states . . . .
> Congress feared that these States would withdraw from the
> cooperative Medicaid program rather than expand their Medicaid
> coverage in a manner commensurate with the expansion of [SSI].
> [I]n order not to impose a fiscal burden on these States or discourage
> them from participating [in Medicaid], Congress offered what has
> become known as the § 209(b) option[:] Under it, States could elect
> to provide Medicaid assistance only to those individuals who would
> have been eligible under the state Medicaid plan in effect on January
> 1, 1972 [i.e., before SSI].  States thus became either SSI States or §
> 209(b) States depending on the coverage that they offered.

Id. (internal quotation marks and citations omitted).  Colorado is a SSI state.  See Colo. Rev. Stat. § 26-4-201(1)(i) (1999).

Under SSI, states, at their option, may provide assistance not only to the "categorically needy," but also to the "optionally categorically needy," who are those applicants eligible for SSI but are not receiving it or who are ineligible for SSI but meet other statutory criteria.  See New Mexico Dept. of Human Servs., 4 F.3d at 883.  For instance, one of the groups covered under Colorado law are persons in institutions, provided the applicant meets the specified income level. See id. § 26-4-301(1)(g).

C. Trusts

"In structuring the Medicaid program, Congress chose to direct [the] limited funds to persons who were most impoverished . . . .." Mattingly v. Heckler, 784 F.2d 258, 266 (7th Cir. 1986). Similarly, Congress created the SSI program "to guarantee a minimum subsistence income level for aged, blind, and disabled persons." White v. Apfel, 167 F.3d 369, 376 (7th Cir. 1999); see also Reed v. Heckler, 756 F.2d 779, 781 n.1 (10th Cir. 1985). Accordingly, eligibility for both Medicaid and SSI benefits is a function of the applicant's "available" assets. If the applicant's "available" assets exceed a statutory ceiling, then coverage is denied. See 42 U.S.C. § 1396a(a)(10)(I)(II).

In an effort to maximize their income that would not tally as an "available" asset, many applicants for Medicaid and SSI tried to "shelter," or shield, their assets. One common instrument for sheltering was an irrevocable trust. Not surprisingly, Congress responded to the use of this technique with condemnation. For example, in 1986, Congress reiterated its intent that Medicaid was designed to provide basic medical care for those without sufficient income or resources to provide for themselves and thus passed 42 U.S.C. § 1396a(k).

Section 1396a(k) was known as the MQT statute, "MQT" being an acronym for Medicaid qualifying trust. The statute defined MQT as

a trust, or similar legal devise, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual.

42 U.S.C. § 1396a(k)(2).

With the passage of § 1396a(k), MQTs were no longer a permissible means to shelter assets for purposes of Medicaid eligibility. Section § 1396a(k) clarified that the amount "available" to an applicant for purposes of determining Medicaid eligibility *included*

the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor.

Id. § 1396a(k)(1).

In the years that followed, Congress remained true to its conviction that MQTs were an impermissible means of sheltering assets for purposes of Medicaid eligibility. In fact, in 1993, § 1396a(k) was repealed by Congress and replaced by another statute even less forgiving of such trusts. See 42 U.S.C. § 1396p(d) (1993). This statute added stringent criteria regarding the treatment of MQTs such as the inclusion of the corpus and proceeds of various irrevocable trusts as countable resources. See H.R. Rep. No. 103-111, at 207-08 (1993).

D.  Ms. Ramey, Ms. Farmer, and Ms. Shupe

In the instant case, we are concerned with the eligibility of three persons for Medicaid benefits who are also in possession of certain trusts established before August 10, 1993.  The Colorado Department of Health Care Policy and Financing ("Colorado Department") contends that the trusts of Ms. Ramey, Ms. Farmer, and Ms. Shupe are MQTs, which therefore disqualifies them from receiving Medicaid benefits.  The following material facts are not in dispute.

1.  Lory Ann Ramey

Ms. Ramey, currently residing in an assisted living facility, first qualified as a categorically eligible SSI recipient – and therefore a Medicaid recipient as well – in 1992.  See Gray Panthers, 243 U.S. at 38 (noting that all SSI recipients are also entitled to Medicaid).  On July 22, 1992, Ms. Ramey's father, Donald Ramey, established an irrevocable trust for her benefit and for the express purpose of protecting her from losing her SSI and Medicaid benefits.  The trust's assets later grew when Ms. Ramey was awarded proceeds during divorce proceedings with her spouse.

In 1994, the Social Security Administration ("SSA") reviewed Ms. Ramey's trust and found that it met the SSA's requirements so that Ms. Ramey was still entitled to SSI – and therefore Medicaid – benefits.  In 1998, however, the

Colorado Department, upon its own review of the trust (which by then had assets totaling approximately $90,000), determined that the trust was a MQT. The Colorado Department thereby terminated Ms. Ramey's Medicaid benefits beginning May 31, 1998.

### 2. Renee M. Farmer

Ms. Farmer, who currently resides in a full-service nursing home, created an irrevocable "special needs" trust for her benefit on December 30, 1992, with proceeds she received from an inheritance. In April 1996, she began to receive Medicaid benefits. In 1997, the Colorado Department reviewed her trust and determined that, because the trust's assets were a countable resource for purposes of Medicaid (i.e., the trust qualified as a MQT), Ms. Farmer was no longer Medicaid eligible.

### 3. Sherry S. Shupe

Ms. Shupe's situation is largely comparable to that of Ms. Ramey. In January 1990, Ms. Shupe was found to be categorically eligible for SSI benefits and therefore qualified for Medicaid benefits, too. Subsequently, during divorce proceedings, the overseeing court issued an order creating a trust for the benefit of Ms. Shupe. In January 1998, the Colorado Department concluded that the trust

was a MQT and therefore terminated her Medicaid benefits effective August 31, 1998.

## II. PROCEDURE

This case, which originated as an action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, has had a complicated procedural history. Plaintiffs Ms. Ramey and Ms. Farmer ("plaintiffs") and intervenor Ms. Shupe ("intervenor") appealed the termination of their Medicaid benefits by the Colorado Department.[1] The district court granted the plaintiffs' motion to amend the complaint to a class action complaint, and two classes were subsequently created. Subclass (a) consisted of individuals who had been denied Medicaid benefits by the Colorado Department on the basis that they held MQTs. This subclass included Ms. Farmer. Subclass (b) consisted of individuals who received SSI benefits and who had been denied Medicaid benefits by the Colorado Department, once again, because they held MQTs. This subclass included Ms. Ramey and Ms. Shupe. For purposes of this appeal, we shall address the plaintiffs and the intervenor by name, cognizant that they represent the interests of the subclasses.

---

[1] There were various proceedings before an administrative law judge regarding Ms. Farmer's trust that are not before this court.

Cross-motions for summary judgment were filed soon after class certification. Upon the district court's referral, the magistrate judge determined that Ms. Ramey's and Ms. Shupe's trusts were not MQTs. More important, the magistrate judge also determined that, because the Secretary of HHS evaluated the two trusts and found both Ms. Ramey and Ms. Shupe eligible for SSI benefits, they were automatically entitled to Medicaid benefits. See Herweg v. Ray, 455 U.S. 265, 268 (1982) (noting that a SSI state "is required to make Medicaid assistance available to all recipients of SSI benefits"). Upon de novo review, the district court agreed with the magistrate judge on the latter point. It declined, however, to make any finding as to whether Ms. Ramey's and Ms. Shupe's trusts were in fact MQTs.

As for Ms. Farmer's trust, the magistrate judge rejected Ms. Farmer's argument that her trust was a "special needs" trust exempt from calculation as a resource under 20 C.F.R. § 416.1201(a). She then concluded that 42 U.S.C. § 1396a(k), though now repealed, was applicable to her trust and that her trust did qualify as a MQT under the statute. Therefore, the Colorado Department properly denied Ms. Farmer Medicaid benefits. The district court adopted this reasoning in a subsequent order.

This appeal concerns the Colorado Department's contention that the district court erred in its conclusions as to Ms. Ramey's and Ms. Shupe's trusts. The

Colorado Department proffers three interpretations of the Act, two promulgated by the Health Care Financing Administration ("HCFA") Department of HHS, and one by SSA, in support of its argument that the state must make Medicaid eligibility determinations independent of the Secretary of HHS.

Ms. Farmer also cross-appeals, arguing that the Colorado Department improperly terminated her Medicaid benefits on the basis of 42 U.S.C. § 1396a(k).  Ms. Farmer does not dispute that, under § 1396a(k), her trust would qualify as a MQT.  Rather, she simply asserts that, if § 1396a(k) had not been applied, then her trust would not be counted toward her gross income and therefore she would qualify for Medicaid benefits.

For the reasons set forth below, we affirm the district court.


### III.  MS. FARMER'S CROSS-APPEAL, NO.  00-1143

We begin by addressing Ms. Farmer's challenge as to whether trusts such as hers, created before August 10, 1993, continue to be governed by 42 U.S.C. § 1396a(k), which was repealed in 1993 and replaced by 42 U.S.C. § 1396p(d).  <u>See</u> page 7, <u>supra</u>.  According to Ms. Farmer, because Congress repealed § 1396a(k), that provision cannot apply to her trust.  In response, the Colorado Department argues that Congress intended that § 1396a(k) be applied to all trusts established on or before August 10, 1993, with the even more stringent criteria of § 1396p(d)

to be reserved for trusts established after August 10, 1993. We hold that the Colorado Department is correct.

As discussed above, Congress enacted § 1396a(k) in 1986 in response to the prevalent use of irrevocable trusts by affluent persons to qualify for Medicaid benefits. See Cohen v. Commissioner of the Div. of Med. Assistance, 668 N.E.2d 769, 770-72 (Mass. 1996). The House Committee on Energy and Commerce recommended passage of § 1396a(k), along with other provisions, with the following statement:

> The Committee feels compelled to state the obvious. Medicaid is, and always has been, *a program to provide basic health coverage to people who do not have sufficient income or resources to provide for themselves*. When affluent individuals use Medicaid qualifying trusts [i.e., MQTs] and similar "techniques" to qualify for the program, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee.

Id. at 772 (quoting H.R. Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 72 (1985) (emphasis added).

We believe it is clear that, when Congress amended the Medicaid qualifications in 1993 to provide even more restrictive requirements on MQTs (i.e., the repeal of § 1396a(k) and the enactment of § 1396p(d)), it did not at the same time intend to abandon *all* eligibility requirements for trusts created before August 10, 1993, and once again allow persons to "divert[] scarce Federal and State resources." Id. In other words, the 1993 amendments did not remove trusts

-13-

dated before August 10, 1993 from the ambit § 1396a(k). See Cook v. Department of Soc. Servs., 570 N.W.2d 684, 686-87 (Mich. Ct. App. 1997).

Notably, the few cases that have addressed this very issue have reached the same conclusion. See Williams v. Kansas Dep't of Soc. & Rehab. Servs., 899 P.2d 452, 455 (Kan. 1995) (acknowledging that § 1396a(k) "was repealed in 1993, but it applies" to the trust at issue, created in 1992); Sanders v. Pilley, 684 So. 2d 460, 464 (La. Ct. App. 1996) (stating that trust created in 1991 was reviewed "[u]nder the prior law applicable to this case," i.e., § 1396a(k)); Cohen, 668 N.E.2d at 773 n.14 (holding that the 1986 Medicaid eligibility test, which includes § 1396a(k), is still applicable to trusts created before August 10, 1993); National Bank of Detroit v. Department of Soc. Servs., 614 N.W.2d 655, 659 (Mich. Ct. App. 2000) (applying the 1986 Medicaid eligibility test, which includes § 1396a(k), to pre-August 10, 1993, trusts); Cook, 570 N.W.2d at 687 (holding that the 1986 Medicaid eligibility test, which includes § 1396a(k), is still applicable to trusts created before August 10, 1993); Ronney v. Department of Soc. Servs., 532 N.W.2d 910, 912 (Mich. Ct. App. 1995) (applying § 1396a(k) to a trust established before August 10, 1993); In re Kindt, 542 N.W.2d 391, 396 (Minn. Ct. App. 1996) (applying § 1396a(k) to a trust created before August 10, 1993, even though "Congress repealed this provision in 1993").

In addition, the federal agency responsible for the Medicaid program, the

Department of HHS, has indicated in its State Medicaid Manual "that trusts established before August 1993 continue to be governed under the 1986 statutory scheme." Cook, 570 N.W.2d at 686 (citing the HCFA, Department of HHS, State Medicaid Manual § 3257 (1995)). Accordingly, we affirm the district court's application of § 1396a(k), enacted in 1986, to trusts dated before August 10, 1993, and its determination that Ms. Farmer was ineligible for Medicaid benefits.

### IV. MS. RAMEY'S AND MS. SHUPE'S APPEAL, NO. 00-1121

The Colorado Department asserts that the district court erred in determining that, as SSI recipients, Ms. Ramey and Ms. Shupe were *automatically* entitled to receipt of Medicaid benefits. According to the Colorado Department, it was required to conduct its own independent review of assets held in trust by SSI recipients to determine their Medicaid eligibility. We disagree.

As noted above, Colorado is a SSI state. The Supreme Court has emphasized that, in a SSI state, "the State is required to make Medicaid assistance available to *all recipients of SSI benefits*." Herweg, 455 U.S. at 268 (emphasis added); see also DeJesus v. Perales, 770 F.2d 316, 319 n.3 (2d Cir. 1985) (noting that "eligibility for SSI confers *automatic* eligibility for Medicaid") (emphasis added); Ross v. Giardi, 680 A.2d 113, 118 n.7 (Conn. 1996) ("recogniz[ing] that states are statutorily required to provide [M]edicaid benefits . . . to those individuals who are receiving SSI benefits"). Whether an applicant is entitled to

SSI depends on whether he or she meets *SSI's* eligibility requirements – an inquiry that is different from a state's *Medicaid* eligibility requirements.

Colorado law does not refute the state's responsibility for SSI recipients with respect to Medicaid benefits. Indeed, Colo. Rev. Stat. § 26-4-201 states that:

> In order to participate in the [M]edicaid program, the federal government requires the state to provide medical assistance to certain eligible groups. . . . Subject to the availability of federal financial aid funds, the following are the individuals or groups that are mandated under federal law to receive [Medicaid] benefits under this article:
>
> . . .
>
> (i) *Individuals receiving supplemental security income* [i.e., SSI] . . . .

Colo. Rev. Stat. § 26-4-201(I)(i) (emphasis added). The three arguments raised by the Colorado Department, primarily based on instructions in the HCFA, Department of HHS, State Medicaid Manual, do not lead us to conclude otherwise.

### A. HCFA § 3215

The HCFA is the administrative arm of the Department of HHS. In its State Medicaid Manual, it instructs that, in order to determine eligibility for Medicaid, payments from a MQT should be considered as an "available" asset – even if the person is "categorically needy." See Aplt's Addendum at 112 (HCFA § 3215). Because SSI recipients fall into the "mandatory categorically needy"

-16-

category, see 42 C.F.R. § 435.120, the Colorado Department argues that it is obligated to review a SSI recipient's MQT assets for Medicaid eligibility.

To begin, we note that this court – as the Colorado Department points out – must give deference to HCFA's interpretations. See New Mexico Dep't, 4 F.3d at 884-85. However, even though deference is required, we stress that the State Medicaid Manual does not have the force and effect of law, nor is it binding on this court, because it was not promulgated pursuant to the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553 ("APA"). See 5 U.S.C. § 553(b)(3)(A) (1996) (noting that notice and comment procedures of the APA do not apply to "interpretative rules"). Thus, to the extent the State Medicaid Manual conflicts with the purpose of the Act, we do not follow it. See New Mexico Dep't, 4 F.3d at 885.

We hold that HCFA § 3215 does not dictate an independent review by the Colorado Department of the MQTs of SSI recipients because to bind SSI recipients to the instruction would controvert the goal of SSI – i.e., to assist low-income individuals who are aged, blind, and disabled who qualify for benefits through SSI's own internal eligibility requirements. Our conclusion is buttressed by the following points. First, the Colorado Department offers no case law casting doubt upon the coextensiveness of SSI and Medicaid eligibility. See Gray Panthers, 453 U.S. at 38 (emphasizing that all SSI recipients are also entitled to

-17-

Medicaid benefits). Second, the subset of the "mandatory categorically needy" includes persons other than SSI recipients – for example, AFDC participants, certain aliens, expectant mothers, and newborns. HCFA § 3215, then, does not become moot because it is not applicable to SSI recipients. It still may be applied to other "mandatory categorically needy" individuals and to § 209(b) states.

B. HCFA § 3259

HCFA § 3259 provides that

[u]nder the trust provisions in § 1917(d) of the Act, you must consider whether and to what extent a trust is counted in determining eligibility for Medicaid. . . . These instructions apply to eligibility determinations for all individuals, *including cash assistance recipients and others who are otherwise automatically eligible and whose income and resources are not ordinarily measured against an independent Medicaid eligibility standard.*

Aplt's Addendum at 114 (HCFA § 3259) (emphasis added). Based on this instruction, the Colorado Department contends that the MQTs of SSI recipients are subject to an independent review by the state for Medical eligibility determinations.

Ms. Ramey and Ms. Shupe argue that this section simply does not apply to SSI recipients because it does not mention SSI recipients. More importantly, we note that this instruction effects only those "trusts established on or after August 10, 1993." Id. at 113. Ms. Ramey's and Ms. Shupe's trusts were established

-18-

*prior* to this date, and so HCFA § 3259 is clearly inapplicable.

In addition, § 3259.1 cites section 1917(d), which applies to a variety of circumstances beyond initial Medicaid eligibility, such as "spend down" requirements for 209(b) States and "deeming" of income determinations for both SSI and § 209(b) States. See Hayes v. Stanton, 512 F.2d 133, 140 (7th Cir 1975) (examining spend down requirements); Herweg, 455 U.S. at 269 (reviewing "deeming" of income requirements for optionally categorically needy). Clearly, the instruction grants States the power to reasonably regulate and may have a practical effect for a variety of situations and will apply to trusts established on or after August 10, 1993. However, the instruction is of no consequence here.

### C. SSA Program Operations Manual System

The SSA's policy guidelines are provided in the Program Operations Manual System ("POMS"), which is a set of policies issued by the SSA "to be used in processing claims." McNamar v. Apfel, 172 F.3d 764, 766 (10th Cir. 1999).[2] POMS No. SI 01730.048(E) is entitled "Procedure Development and Documentation, Section 1634 States." See id. at 117 (POMS No. SI

---

[2] Like the HCFA's interpretive rules above, we defer to the POMS provisions unless we determine they are "arbitrary, capricious, or contrary to law." Id.

01730.048(E)). It provides that the "existence of a Medicaid trust will result in a referral of the case to the Medicaid State agency for a Medicaid eligibility decision." Id. According to the Colorado Department, this policy guideline indicates that the state must conduct its own review of MQT trusts of SSI recipients for purposes of Medicaid, regardless of what the Secretary of HHS has determined with respect to SSI eligibility.

We hold that the policy guideline has no effect on the instant case because, as with HCFA § 3259, it applies only to trusts established after August 10, 1993. See id. at 115. We also note that Colorado and the Secretary of HHS have entered into a written agreement which specifies that the Department of HHS shall "[m]ake determinations . . . of Medicaid eligibility on behalf of the State" of Colorado. See Aplt's App. vol. I, at 523-24 (agreement between the Secretary of HHS and Colorado). Finally, we can find nothing in Colorado's statutes to support the Department's arguments, but only to undercut them.    See Colo. Rev. Stat. 26-4-106(1) ("Local social security offices also determine eligibility for medicaid benefits at the same time they determine eligibility for supplemental security income"). To the extent that the POMS No.    SI 01730.048(E) conflicts with the Act's requirement that SSI recipients are entitled to Medicaid benefits, the Act prevails. We agree with the district court that because Ms. Ramey and Ms. Shupe are undisputedly SSI recipients, they are entitled to Medicaid benefits from

the State of Colorado.

## III. CONCLUSION.

For the reasons set forth above, we AFFIRM the district court's order.