**Freddie GRAHAM, Plaintiff,**

**v.**

**Jo Anne BARNHART, Commissioner of Social Security, Defendant.**

No. 01–4101.

United States District Court,
D. Kansas.

Aug. 18, 2003.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Defendant.

Steven M. Tilton, Tilton & Tilton, LLP, Topeka, KS, for Plaintiff.

### *MEMORANDUM AND ORDER*

ROBINSON, District Judge.

Plaintiff initiated this case by filing a Complaint and Application for Writ of Mandamus (Doc. 1), asking the Court to enforce the June 29, 1990 decision of the Commissioner and compel the payment to Plaintiff of Title II and Title XVI benefits retroactively to September 1978, or at the least to 12 months prior to the filing date of the claim denied at the hearing level on August 31, 1982.[1] In this Court's September 5, 2002 Order Denying Motion to Dismiss, the Court found that Plaintiff had presented a colorable constitutional claim that provided the Court with subject matter jurisdiction.[2]

### PROCEDURAL HISTORY:

Plaintiff initially filed Applications for Disability Insurance Benefits under Title II of the Social Security Act (Title II benefits) and Supplemental Security Income Benefits under Title XVI of the Social Security Act (SSI benefits) on January 17, 1979, alleging disability beginning on May 15, 1978. (Tr. 344–47) These claims were denied at the initial level on February 13, 1979. (Tr. 349) Plaintiff requested reconsideration on April 5, 1979, (Tr. 350) and the claims were again denied on May 1, 1979. (Tr. 352) Plaintiff requested a hearing on the Title II portion of her claim on August 31, 1979.[3] (Tr. 353, 380) A hearing was held on November 8, 1979, (Tr. 396) and on November 23, 1979, the Administrative Law Judge (ALJ) found Plaintiff was not disabled and not entitled to any benefits. (Tr. 475–483) Plaintiff requested review by the Appeals Council on February 21, 1980. (Tr. 484–488) On March 21, 1980, the Appeals Council denied Plaintiff's request for review for failure to file her appeal within 60 days of the ALJ's decision. (Tr. 494–97).

Plaintiff filed a subsequent application for Title II benefits and SSI benefits on September 2, 1980. (Tr. 398–401, 407) Plaintiff alleged disability beginning in "May 1978." (Tr. 398) This application was denied at the initial level on November 18, 1980. (Tr. 402, 412) Plaintiff filed her request for reconsideration on December 16, 1980. (Tr. 404, 437–440) Her claim was again denied on January 17, 1981. (Tr. 405, 406, 411, 413) Plaintiff requested a hearing on February 19, 1981. (Tr. 468–471) A hearing was scheduled for April 14, 1981, and Plaintiff did not appear. (Tr. 498) Plaintiff was given until May 11, 1981 to show good cause for her failure to appear at the hearing. (Tr. 498) Despite the May 11 deadline, the ALJ dismissed Plaintiff's request for hearing for failure to

---

1. *See* Plaintiff's Complaint and Application for Writ of Mandamus (Doc. 1) at p. 6.

2. *Graham v. Barnhart,* 2002 WL 31007929 (D.Kan. Sept.5, 2002).

3. The ALJ found good cause for Plaintiff's late filing. (Tr. 476)

appear on May 5, 1981. (Tr. 499–500) On May 18, 1981, Plaintiff requested a review of the hearing decision/order stating,

> I am physically unable to work and all of this denial has me emotionally upset. I must stand and walk to work and I can't do either. Disabled in 1978. F. Graham. (Tr. 501).

Plaintiff filed a third application for Title II benefits and SSI benefits on July 16, 1981. (Tr. 131–134, 144–153) Plaintiff alleged disability beginning on "3/xx/78." (Tr. 131) Her claims were denied initially on September 1, 1981. (Tr. 135–136, 137–138, 154–155, 156–157) Plaintiff filed a Request for Reconsideration on September 28, 1981. (Tr. 139) Her claims were again denied on October 26, 1981. (Tr. 140–143, 158–159, 160–161) Plaintiff filed a Request for Hearing with an ALJ on October 28, 1981. (Tr. 190) On June 15, 1982, Plaintiff presented before the ALJ (Tr. 63) and the ALJ denied Plaintiff's applications for benefits on August 31, 1982. (Tr. 62–71) Plaintiff requested a Review of the Hearing Decision/Order on September 13, 1982. (Tr. 61) The Appeals Council denied Plaintiff's request for review on January 26, 1983. (Tr. 42–43) Plaintiff filed a Complaint in the United States District Court for the District of Kansas. (Tr. 513–515) Plaintiff's claim was remanded to the Commissioner for further proceedings on August 31, 1983, because the hearing tape was "blank." (Tr. 39–40, 609) A supplemental hearing was held on November 10, 1983. (Tr. 114–130) The ALJ issued a "Recommended Decision" on November 30, 1983, finding Plaintiff disabled beginning on May 6, 1981. (Tr. 11–19) Plaintiff objected on December 3, 1983, arguing that she has been disabled since 1978. (Tr. 229–233) On February 14, 1984, the Appeals Council vacated the ALJ's decision and found that Plaintiff has not been disabled at any time. (Tr. 5–10) Plaintiff again brought a civil action and on June 29, 1984, the United States District Court issued a Memorandum Order affirming the denial of benefits. (Tr. 607–616).

Plaintiff filed a fourth application for SSI benefits on September 6, 1984. (Tr. 622–631) Plaintiff alleged disability beginning March 3, 1978. (Tr. 623) Her claim was allowed on December 11, 1984, with a finding of disability beginning on September 6, 1984 (date of application). (Tr. 632) Plaintiff requested an informal conference which was held on February 19, 1985. (Tr. 652–653) Plaintiff said "there had been a wrongful denial decision made in her case." (Tr. 652) Plaintiff then wrote a letter on February 22, 1985 stating, "I request a hearing on Reconsideration denieying [sic] Benefits from 1979 through 1985 and permantly [sic] held Feb 19—85 at Topeka office." (Tr. 654) Plaintiff's Request for Hearing was dismissed by the ALJ on April 12, 1985. (Tr. 655–658) The basis for this decision was that *Res Judicata* prevented the ALJ from making a decision on this claim. (Tr. 658) Plaintiff filed a Request for Review of Hearing Decision/Order on May 2, 1985. (Tr. 659) On June 25, 1985, the Appeals Council denied Plaintiff's Request for Review stating that the ALJ properly found there was no jurisdiction for her claim. (Tr. 660–661).

Plaintiff filed a final application for Title II benefits on May 2, 1989. (Tr. 674–677) Plaintiff alleged disability beginning March 2, 1978. (Tr. 674) Plaintiff's date of last insured for Disability Insurance Benefits is December 31, 1982. (Tr. 691) Her claim was denied initially on May 25, 1989. (Tr. 678, 692–694) Plaintiff filed a Request for Reconsideration on June 8, 1989. (Tr. 696–697) Her claim was again denied on July 13, 1989. (Tr. 700, 712–713) Plaintiff filed a Request for Hearing with an ALJ on August 4, 1989. (Tr. 714, 716–717, 1081–1082) On April 6, 1990, Plaintiff presented before the ALJ (Tr. 301–343) and

on June 29, 1990, the ALJ found that based on the application filed May 2, 1989, Plaintiff has been under a disability as defined by the Social Security Act since March 2, 1978, and that Plaintiff was entitled to a period of disability commencing March 2, 1978, and to disability insurance benefits under sections 216(1) and 223, respectively, of the Social Security Act, as amended. (Tr. 297) The June 29, 1990 Decision, which included a "Notice of Favorable Decision" form, provided in relevant part:

> The claimant met the insured status requirements of Title II of the Act on March 2, 1978, but she continued to do so only through December 31, 1982, and not thereafter through the date of this decision.... Therefore, in order for the claimant to be entitled to a period of disability and to disability insurance benefits she must establish that she was disabled on or before December 31, 1982.

> . . . . .

> I note in regard to the Court's decision [referring to the June 29, 1984 Memorandum and Order], however, that i[t] was, along with the various decisions by Administrative Law Judges prior to the passage of the Disability Benefits Reform Act of 1984 (DBRA), enacted on September 18, 1984[sic]. The latter legislation, and implementing regulations stipulate that the evaluation of mental impairments requires a longitudinal assessment of a claimant's condition, and, furthermore, rejects as a basis for decisionmaking a snapshot, consultative examination such as the one claimant underwent in 1981. It was this examination which provided the basis for the non-severe determination (relative to the mental illness question) by Judge Stanley, which determination was undisturbed by the Appeals Council in its decision of February 14, 1984, which otherwise reject-

ed Judge Stanley's opinion. As noted, however, claimant was later found to be disabled on her supplemental security income claim of September 6, 1984. Furthermore, testimony by the medical expert at my hearing, Dr. Ralph Bharati, indicated claimant's mental impairment had been present, even if not disabling, for a number of years.

> As relevant here, DBRA, above, provided options, in certain circumstances to obtain assessment of old, unfavorable rulings. Also, the Agency was required to reopen certain cases on its own motion where determinations were entered after March 1, 1981. As to the latter, the fact of a Court opinion ostensibly considering the mental illness question would have excused Social Security from any re-review on its own motion. While DBRA Section 5, did allow claimants to request review of old claims, such requests had to be filed within a year of enactment. There was no such request filed here until the issue was raised by the filing of the present claim on May 2, 1989. There is no basis, therefore, on which to find claimant is *entitled* to reassessment of her mental status during the time when her coverage remained in effect.

> Notwithstanding the above, I believe there are reasons to afford claimant the statutorily mandated, longitudinal evaluation unless *res adjudicata* applies to preclude such review.....

> Based upon the foregoing, the Administrative Law Judge has concluded that the claimant has a significant mental impairment which has been present at all times pertinent herein and which has become exacerbated by her experiences and relationships with the Social Securi-

ty Administration with respect to her earlier claims.

. . . . .

Based on the foregoing, the Administrative Law Judge finds that it is readily apparent that the claimant has had a severe mental disorder at all times pertinent herein despite her past denials of such. Further, the record contains new and material evidence which was not available at the time the determinations were made pertaining to the claimant's first three applications. More importantly, the Administrative Law Judge is of the opinion, after carefully studying the prior determinations, that the issue of the claimant's mental impairment(s) was not properly considered by the Administration or in the hearing process. Consequently, the Administrative Law Judge finds that the prior determinations pertaining to the claimant's disability for purposes of entitlement to benefits under Title II of the Act are not final and binding upon the claimant. This conclusion in part is supported by the DBRA legislation and the Administration's subsequent determination that the issues of Administrative Finality and Res Judicata are not applicable to claims involving mental impairments from March 1981 through August 24, 1985. Although, as was noted, there has been a District Court ruling on a prior claim after claimant's date last insured, I conclude that the posture of the case was such that the only conclusively determined issue was whether the Appeals Council's finding on non-severity in regard to alleged physical impairments was correct. Therefore, it does not bar claimant from having her Title II claim evaluated under DBRA for the first time now.

Therefore, the Administrative Law Judge finds that the claimant was disabled on March 2, 1978 as the result of a severe mental impairment, and that she has been continuously disabled at all times subsequent thereto through the date of this decision. Hence, she is entitled to a finding of "disabled" and to disability insurance benefits based upon her application filed on May 2, 1989.

Plaintiff was not represented by counsel in the proceedings resulting in the June 29, 1990 decision or in her attempt to appeal that decision. Plaintiff filed a pro se request for review on August 24, 1990, stating under reasons for disagreement: "See Attached LTR for explanation of appeal Reason I agree with ALJ decision S.S. benefits from 1978 and permantely. Freddie L. Graham It's time you pay me." The Appeals Council denied Plaintiff's request for review on May 15, 1991.

On December 19, 2000, Plaintiff wrote the Social Security Administration (SSA) advising that the Decision dated June 29, 1990, awards back benefits retroactively to September, 1978, or at least 12 months prior to the filing date of the claim denied at the hearing level on August 31, 1982 and Plaintiff should be paid those benefits. (Tr. 265–266)

On February 6, 2001, the Hearing Office Director of the Wichita, Kansas, Office of Hearings and Appeals stated that she had spoken with the ALJ that rendered the June 29, 1990 decision and it continued to be his position that Plaintiff did not request a review of her prior decisions within the appropriate time frame following enactment of DBRA legislation, Plaintiff's prior decisions are not reopenable, appropriate payment was made based on Plaintiff's May 2, 1989 application, and the decision dated June 29, 1990, stands as is. (Tr. 264)

On March 30, 2001, Plaintiff wrote the Appeals Council requesting that the Hearing Decision, dated June 29, 1990, be enforced and additional benefits be awarded effective September, 1983, pursuant to the

application filed September 6, 1984. (Tr. 261, 262–263)

Plaintiff requested Appeals Council review, and on June 5, 2001, the Appeals Council advised Plaintiff's attorney that the ALJ, by declining to take further action, effectively denied the request by Plaintiff for reopening of the June 29, 1990 decision, and that the Appeals Council has no jurisdiction to consider the issues raised in Plaintiff's March 30, 2001 correspondence. (Tr. 260)

On July 27, 2001, Plaintiff filed the current action in this Court seeking mandamus relief. In her Complaint, Plaintiff asks that this Court compel the Commissioner to pay Plaintiff retroactive Title II and XVI disability benefits to September of 1978, or alternatively, to 12 months prior to the filing date of the claim denied at the hearing level on August 31, 1982. On November 8, 2001, the Commissioner filed a Motion to Dismiss Plaintiff's cause of action on the basis that Plaintiff failed to obtain a "final decision," thus depriving this Court of jurisdiction over this action. On September 5, 2002, this Court denied the Motion to Dismiss, found that Plaintiff had presented a colorable constitutional claim, and ordered both parties to file simultaneous briefs by October 11, 2002, regarding Plaintiff's entitlement to mandamus relief. Thereafter, Defendant filed six different motions seeking 30 day extensions of the time to answer or otherwise plead. In the sixth motion, filed on February 18, 2003, Defendant indicates that "[t]o date the Social Security Administration advises that they have been unable to locate the file."

On March 19, 2003, Defendant filed a Motion to Remand, seeking remand "in order to permit Defendant to recreate the claim file as the Office of Hearing and Appeals has been unable to locate the claim file containing the Administrative Law Judge's decision of June 22, 1996, and the tape recording of the hearings held on November 10, 1983 and June 15, 1982." On April 10, 2003, a hearing was held and the Court denied the Motion to Remand and set a briefing schedule. Subsequently, Defendant located the claims file and produced a certified administrative transcript which was filed with Defendant's Answer on April 29, 2003. This matter was finally briefed and ready for a decision on July 28, 2003.

## DISCUSSION

### *DBRA*

The Social Security Disability Benefits Reform Act of 1984 (DBRA) [4], was intended to remedy certain perceived inequities in the Social Security system. DBRA changed the way mental impairments were evaluated so disability determinations would be based on a long-term perspective of a claimant's physical and mental state rather than focusing solely on the person's psychological fitness at the time of hearing.[5]

Section 5(c)(3) of the DBRA provides a limited remedy for persons whose claims had been adjudicated and denied under SSA's old regulations for finding mental impairments. Specifically, § 5(c)(3) provides that:

> Any individual with a mental impairment who was found to be not disabled pursuant to an initial disability determination or a continuing eligibility review between March 1, 1981, and the date of the enactment of this Act [October 9, 1984], and who reapplies for benefits under title II or XVI of the Social Security Act, "42 USC 401, 1381" may be

---

4. Pub.L. No. 98–460, 1984 U.S.Code Cong. & Admin. News (98 Stat.) 1794.

5. H.R.Rep. No. 618, 98th Cong., 2d Sess. 2, 7–8, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3038.

determined to be under a disability during the period considered in the most recent prior determination. Any reapplication under this paragraph must be filed within one year after the date of the enactment of this Act, and benefits payable as a result of the preceding sentence shall be paid only on the basis of the reapplication.

■ Thus, under § 5(c)(3), an individual may establish entitlement to disability benefits by showing that he or she: 1) was found to be not disabled pursuant to an initial disability determination or a continuing eligibility review[6] between March 1, 1981 and October 9, 1984; and 2) reapplied for benefits under Title II or XVI within one year after the date of the enactment of the Act (October 9, 1984).

### 1) Unfavorable "Initial Disability Determination":

Plaintiff had an unfavorable "initial disability determination" within the prescribed time frame. Her July 16, 1981 applications were initially denied on September 1, 1981. The Court rejects Defendant's argument that because Plaintiff exhausted her administrative remedies and obtained judicial review of the determinations made with respect to her July 16, 1981 applications, she does not have an "initial disability determination" within the meaning of § 5(c)(3).

The cases cited by Defendant are distinguishable. Defendant cites *Lichter v. Bowen*,[7] and *Mazzola v. Secretary of Health & Human Servs.*[8] Both of these cases dealt with the revised criteria and § 5(c)(1) of DBRA. That section provides that denials occurring at the initial deter-

mination, reconsideration, or ALJ hearing levels during the interim period between DBRA's enactment (October 9, 1984) and the establishment of the revised criteria (August 28, 1985), were to be redetermined using such revisions. The express language of § 5(c)(1) shows that the legislative intent was "that the revised mental impairment criteria should not be applied to cases involving initial determinations of eligibility ... which had progressed past the administrative hearing stage as of the date of the Act's enactment ..."[9] Thus, in the cases cited by Defendant, the initial determination, reconsideration of, and hearing on the initial disability determination of the claimant's application were all made or held prior to October 9, 1984, the date of DBRA's enactment.

The present case, however, is brought under § 5(c)(3), which requires an unfavorable initial disability determination between March 1, 1981 and the date of the enactment, October 9, 1984. Plaintiff's unfavorable initial disability determination was within the prescribed time frame.

### 2) Reapplication for Benefits Within One Year of Enactment:

■ Section 5(c)(3) requires reapplication within one year of DBRA's enactment. In this case, Plaintiff had a claim pending during the relevant time frame. Defendant argues that the pending application was insufficient and that Plaintiff was required to "reapply."

The Court rejects Defendant's argument and agrees with the reasoning set forth in *Tarpley v. Secretary of Health & Human Servs.*[10] In *Tarpley*, instead of submitting a new application under § 5(c)(3), the

---

**6.** This case does not involve a "continuing eligibility review."

**7.** 814 F.2d 430, 434 (7th Cir.1987).

**8.** 795 F.2d 222 (1st Cir.1986).

**9.** *Id.* at 224.

**10.** 811 F.2d 608, 1986 WL 18474 (6th Cir. 1986).

claimant continued to press his previous claim by taking another appeal to the District Court.[11] His appeal was denied on September 23, 1985, and he timely filed a Rule 59(e) motion to alter or amend the judgment based on the new mental impairment guidelines contained in DBRA. The court stated in relevant part that:

... courts do not abandon their powers of equity when reviewing disability determinations. Furthermore, we are asked in this case to effectuate the remedial intent underlying a statute which sought to provide benefits to claimants such as Mr. Tarpley. Fostering this intent is always the primary goal of judicial review.

In this case, Mr. Tarpley chose to seek redetermination by making a Rule 59(e) motion to the District Court rather than making an application *de novo* when he already had a pending claim. In so doing, we believe he met the requirements of a "reapplication" for purposes of § 5(c)(3) of the Reform Act. Since this motion was made within a year of the enactment of that Act, Mr. Tarpley is entitled under the terms of the statute to a redetermination under the new criteria. Under these circumstances, it was reasonable for Mr. Tarpley to seek reconsideration of his first claim rather than reapply to the Secretary and be forced to press two claims at once. It would be unfair and contrary to the Reform Act to read § 5(c)(3) in such a restrictive fashion.[12]

Likewise, in this case it would be against equity and good conscience not to deem Plaintiff's pending claim, filed on September 6, 1984, as a request for review under DBRA. This case involves a lady with a disabling mental impairment who files an application for SSI benefits on September 6, 1984, alleging disability beginning March 3, 1978. (Tr. 623) She files only an SSI claim because the SSA employee taking her claim tells her she is no longer insured to file a claim for disability benefits. The DBRA is passed on September 18, 1984. Even though the DBRA was passed 12 days after Plaintiff filed her SSI application, no SSA employee advises her either orally, or in writing, that Congress passed the DBRA or that she had a right to have her mental impairment reevaluated. Her SSI claim is allowed on December 11, 1984, with a finding of disability beginning on September 6, 1984 (date of application). (Tr. 632) There is no notice in the December 11, 1984 SSI decision allowing her claim of her rights under the DBRA, or that she should file a new claim if she wants her prior claim considered under the DBRA. She is not satisfied and requests an informal conference which was held on February 19, 1985. (Tr. 652–653) Despite being allowed SSI benefits, she said "there had been a wrongful denial decision made in her case." (Tr. 652) She writes a letter on February 22, 1985 stating, "I request a hearing on Reconsideration denieying [sic] Benefits from 1979 through 1985 and permantly [sic] held Feb 19—85 at Topeka office." (Tr. 654) SSA personnel never inform her that her prior denials can be reconsidered under the newly enacted DBRA. They never tell her to file a "reapplication." She files a Request for Hearing but it is dismissed by an ALJ on April 12, 1985, who states *Res Judicata* prevents him from making a decision on her request for review of the December 11, 1984, decision. (Tr. 658). Still, no mention of the DBRA. (Tr. 655–658) Not satisfied, she next files a Request for Review of Hearing Decision/Order on May 2, 1985. (Tr. 659) On June 25, 1985, the Appeals Council denies her Request for Review stating that the ALJ properly

---

**11.** *Id.* at *1.

**12.** *Id.* at *1–2.

found there was no jurisdiction for her claim. (Tr. 660–661) Still, no mention of DBRA.

The Court finds that Plaintiff's pending application was sufficient for purposes of § 5(c)(3).[13] In addition, the scope of Plaintiff's application for SSI benefits filed September 6, 1984, includes an application for all benefits under both Title II and Title XVI of the Social Security Act, as amended. The September 6, 1984 application reads "I/We hereby apply for Supplemental Security Income under title XVI of the Social Security Act, for benefits under the other programs administered by the Social Security Administration and, where applicable, for medical assistance under title XIX of the Social Security Act." (Tr. 622) An SSI application generally covers all classes of benefits for which the claimant is eligible on a social security number regardless of the title of the application.[14] Specifically, SSA policy provides that an SSI application is considered an application for any benefits the claimant may be eligible for.[15]

### Reopening

Because the ALJ found that the scope of an application does include a request for

review under § 5 of DBRA, there is an error on the face of the June 29, 1990 hearing decision finding that "no such request was made." The ALJ erred in finding that there was no request under DBRA because the claim filed on September 6, 1984, was pending on September 18, 1984 when DBRA was enacted. The failure of the ALJ to consider the claim filed on September 6, 1984, is an error on the face of the record and res judicata does not apply.[16]

Defendant argues that error was not "on the face of the **evidence**," as required by 20 C.F.R. § 404.988(c)(8)[17], but rather was an error in the ALJ's decision itself. Actually, the ALJ's decision rests on his improper recitation of the evidence contained in the record in regards to Plaintiff's September 6, 1984 application and subsequent statements to the SSA during the appeal period of that application, all of which are contained in the record at the time the ALJ made his decision. The ALJ stated, "[t]here was no such request [under the DBRA] filed here until the issue was raised by the filing of the present claim on May 2, 1989. There is no basis, therefore, to find claimant is entitled to reassessment

---

**13.** Plaintiff has also set forth numerous statements made by her or on her behalf between September 18, 1984 and September 18, 1985, that she claims constitute requests for review under DBRA. *See* Plaintiff's Brief in Support of Entitlement to Mandamus and Appropriate Relief (Doc. 41) p. 10—13. Because the Court finds that Plaintiff's pending application was sufficient, Plaintiff need not rely on these statements.

**14.** *See* POMS § GN 00204.020(A). Although the POMS (Social Security Administration Program Operations Manual System) is not legally binding authority, it is nevertheless persuasive authority of the agencies' own interpretation of Social Security Regulations. *See Davis v. Secretary of Health and Human Services,* 867 F.2d 336, 340 (6th Cir.1989); *Hermes v. Secretary of Health and Human Services,* 926 F.2d 789, 791 n. 1 (9th Cir.

1991); *Ellis v. Apfel,* 147 F.3d 139, 142 n. 3 (2nd Cir.1998).

**15.** POMS § SI 00601.010(D)(1).

**16.** *See* 20 C.F.R. §§ 404.989(a)(3), 416.1489(a)(3) (1983).

**17.** Section 404.988(c)(8) provides that:

A determination, revised determination, decision, or revised decision may be reopened-

(c) At any time if-

(8) It is wholly or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made.

of her mental status during the time when her coverage remained in effect." (Tr. 293) Plaintiff's pending claim, based on the application filed September 6, 1984, is a request under the DBRA during the relevant time frame entitling Plaintiff to reassessment of her mental status. The decision may be reopened based upon the ALJ's erroneous finding that appears on the face of this evidence contained in the claim folder. The ALJ's error is more than a mere legalistic misinterpretation.

Defendant also argues that the SSI provisions dealing with reopening are not comparable to § 404.988(c)(8), which is applicable to Title II benefits. Defendant argues that while § 404.988(c)(8) allows reopening "at any time" to correct an error that appears on the face of the evidence, the SSI provision, § 416.1488, does not provide the same relief. Section 416.1488 provides that:

> A determination, revised determination, decision, or revised decision may be reopened-
>
> (a) Within 12 months of the date of the notice of the initial determination for any reason;
>
> (b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or
>
> (c) At any time if it was obtained by fraud or similar fault. In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have had at the time.[18]

■ Thus, Defendant argues that the good cause argument is only available for two years, and Plaintiff must rely on section (c). However, an ALJ must inquire whether the applications were denied as the result of "fault" (i.e., mental incapacity) under § 416.1488(c), and inquire whether the claimant had any mental or physical conditions that limited her "ability to do things for [her]self," in accordance with SSR 91–5p, 1991 WL 208067, at *2.[19] Section 416.1488(c) "empowers an ALJ to consider reopening past applications by evaluating whether a claimant was too impaired to comprehend notice."[20] In this case, the ALJ specifically found that Plaintiff was disabled on March 2, 1978 as the result of a severe mental impairment, and that she had been continuously disabled at all times subsequent thereto through the date of the June 29, 1990 decision.

### Writ Of Mandamus

■ Plaintiff has requested mandamus relief in this case. The common law writ of mandamus jurisdiction is codified at 28 U.S.C. § 1361. Under § 1361, a district court has original jurisdiction over a mandamus action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is an extraordinary remedy that is utilized "only if [the plaintiff] has exhausted all other avenues of relief and only if the defendant owes [her] a clear nondiscretionary duty."[21] Mandamus is appropriate where the person seeking the relief "can show a duty owed to [her] by the government official to whom the writ is directed that is ministerial, clearly defined and peremptory."[22] "[I]t is the court's duty in a mandamus action to

**18.** 20 C.F.R. § 416.1488.

**19.** *See Byam v. Barnhart*, 336 F.3d 172, 178 (2003).

**20.** *Id.* at 182.

**21.** *Blair v. Apfel*, 229 F.3d 1294, 1296 (10th Cir.2000) (citation omitted); *Cordoba v. Massanari*, 256 F.3d 1044, 1047 (10th Cir.2001) (citation omitted).

**22.** *Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564,

measure the allegations in the complaint against the statutory and constitutional framework to determine whether the particular official actions complained of fall within the scope of the discretion which Congress accorded the administrators .... In other words, even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated." [23] If, after studying the statute and its legislative history, the court determines that the defendant official has failed to discharge a duty which Congress intended him to perform, the court should compel performance, thus effectuating the congressional purpose. [24]

Plaintiff argues that she is entitled to mandamus relief because the Defendant should have construed her September 6, 1984 application and the multiple statements she made to the SSA between September 1984 and September 1985 as a "request to review" her claim under § 5(c)(3) of the DBRA. She also argues that there was an "error on the face" of the ALJ's June 29, 1990 decision that met the requirements for reopening described in 20 C.F.R. §§ 404.989 and 416.1489 when the ALJ found that no "request for review" under DBRA was made.

Despite the multiple requests by Plaintiff, not once does the record indicate that the SSA, or any agent or representative, at any point during the one year time frame following the enactment of DBRA advised Plaintiff orally, or in writing, that she could request review under DBRA and that the request must be filed within one year of DBRA's enactment. This is especially critical given Plaintiff's mental impairment. The SSA, at most all levels of appeals, has been aware of Plaintiff's mental impairment well before, during and after the DBRA time period. [25]

The Social Security Act is complex and filled with technical regulations and law. The Act requires the expertise of a professional to render interpretations to individuals due to this complexity. There is an implied assumption that claimants who apply for disability benefits need a full and accurate explanation of the options available to them. The general public must rely on the expertise and knowledge of the Social Security office representative in their entitlement process. When a claimant contacts the SSA to file for benefits, he or she must rely on the SSA to protect his or her rights. The representatives are not adversaries. They are administrators with the responsibility of providing all information needed to make an informed decision. If the representative does not provide all information needed a claimant cannot make an informed decision, nor protect his or her rights.

 The general purpose of the Social Security Act is to ameliorate some of the rigors of life. [26] The Act is usually construed liberally by the SSA and the courts in a manner which furthers its remedial purposes. [27] This underlying policy

566 (10th Cir.1981) (quoting *Schulke v. United States,* 544 F.2d 453, 455 (10th Cir.1976)).

**23.** *Id.* (quoting *Davis Assocs., Inc. v. Secretary, Dep't of Housing and Urban Dev.,* 498 F.2d 385, 389 & n. 5 (1st Cir.1974)).

**24.** *Id.* (citations omitted).

**25.** *See* Plaintiff's Brief in Support of Entitlement to Mandamus and Appropriate Relief (Doc. 41) p. 14—17.

**26.** *Dvorak v. Celebrezze,* 345 F.2d 894, 897 (10th Cir.1965); *Fletcher v. Chater,* 916 F.Supp. 1086, 1089 (D.Kan.1996).

**27.** *See Brown & Bartlett v. U.S.,* 330 F.2d 692, 696 (6th Cir.1964).

requires the courts to interpret the Act liberally, and any doubts should be resolved in favor of coverage.[28] If any basis in law exists to grant relief, the Act is generally construed in that way.[29] Like the Act, the SSA's regulations are given a liberal interpretation to avoid denying benefits to persons whom the statute was designed to protect.[30]

The Court is aware that this is an extraordinary case. The facts and circumstances present in this case do not represent a reoccurring problem. The DBRA time period has passed and the situation present in this case is a rarity. This case, however, presents the extraordinary circumstance deserving of mandamus relief. Plaintiff in this case clearly has no other means to obtain the additional retroactive past due benefits without the assistance of this Court. Plaintiff's request to have benefits paid retroactively to September 1978 shall be granted.

Plaintiff's Complaint also seeks to recover costs and attorney fees. Defendant acknowledges that certain costs charged against the government of the United States can be paid from the Judgment Fund by the Department of the Treasury, if so ordered by the Court, pursuant to 31 U.S.C. § 1304. The award must be certified by the Office of the United States Attorney to the Department of Treasury for payment. Defendant further acknowledges that this Court, pursuant to § 206(b) of the Act, 42 U.S.C. § 406(b) may award a reasonable fee, under Title II only and not in excess of 25% of total past-due benefits, such fee to be paid from such past-due benefits, where the Court renders judgment favorable to Plaintiff. Such an award of costs and fees shall be made in this case.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Complaint and Application for Writ of Mandamus (Doc. 1) shall be GRANTED.

**IS SO ORDERED.**

---

**28.** *Rasmussen v. Gardner,* 374 F.2d 589, 594 (10th Cir.1967) (citation omitted).

**29.** *Lietz v. Flemming,* 264 F.2d 311, 313 (6th Cir.1959) (citation omitted).

**30.** *See Marion v. Gardner,* 359 F.2d 175 (8th Cir.1966).