Dylan Michael STELL, Petitioner,

v.

BOULDER COUNTY DEPARTMENT OF SOCIAL SERVICES and The State of Colorado Department of Health Care Policy and Financing, Respondents.

No. 03SC511.

Supreme Court of Colorado, En Banc.

June 14, 2004.

As Modified on Denial of Rehearing July 12, 2004.

.Sagrillo, Hammond & Dineen, LLC, Robert L. Sagrillo, Henry M. Kohnlein, Claire E. Dineen, Denver, Colorado, Attorneys for Petitioner.

Ken Salazar, Attorney General, Ann Hause, First Assistant Attorney General, Laurie A. Schoder, Assistant Attorney General, Anne Baudino Holton, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

Federal and state laws allow a disabled person who has financial assets exceeding $2,000 to qualify for Medicaid benefits under certain circumstances if the assets are placed in a qualified trust. In this opinion, we review the court of appeals' decision in *Stell v. Colorado Department of Health Care Policy and Financing*, 78 P.3d 1142 (Colo.App. 2003), which held that the trust established for the petitioner, Dylan Michael Stell, did not qualify. The Colorado Department of Health Care Policy and Financing (the "Department") rejected Stell's trust because it provided that, when the trust terminates after Stell dies, the trustee could use the funds to pay outstanding state and federal taxes prior to reimbursing the state for medical assistance rendered. The court of appeals concluded that the state must have absolute priority to the trust funds when the trust ends and affirmed the Department's determination that Stell's trust failed to meet federal and state statutory requirements. We reverse.

We hold that upon termination of a disability trust, a trustee may use the corpus of the trust to pay state and federal taxes before the state is reimbursed for medical assis-

tance rendered to the beneficiary. This construction of Colorado's disability trust statute, section 15–14–412.8, 5 C.R.S. (2003), is consistent with the language of the statute, the federal enabling act, the applicable federal guidelines, as well as state and federal tax law.[1]

In reaching the merits of the case, we determine that Stell's case is not moot and is ripe for this court's review. These arguments are raised because after the Department issued its final agency action terminating Stell's Medicaid benefits, the United States Court of Appeals for the Tenth Circuit decided that recipients of social security income ("SSI") benefits such as Stell are categorically eligible for Medicaid. *Ramey v. Reinertson*, 268 F.3d 955 (10th Cir.2001). The consequent reinstatement of Stell's benefits does not moot the case. To the contrary, the priority of payments upon termination of a disability trust is justiciable because the court of appeals' construction of section 15–14–412.8 inevitably exposes a trustee to personal liability for taxes due upon termination of the trust. Stell's trust remains in effect, and he is entitled to a judicial determination of the trustee's legal obligations in administering the trust.

Accordingly, we reverse the court of appeals' decision in this case and return it to the court of appeals for further proceedings consistent with this opinion.

1. Because the statutes relevant to this dispute have not changed since this case arose, we refer to their current codification in this opinion.

2. Federal law surrounding disability trusts has evolved considerably over the last two decades. Prior to 1986, an irrevocable trust was not considered to be an asset in determining an applicant's eligibility for Medicaid. *Ramey*, 268 F.3d at 958. This loophole allowed individuals to shield their personal assets, and continue to receive public welfare benefits. *Id.* In 1986, Congress enacted a statute to control this practice. 42 U.S.C.A. § 1396a(k) (West 1993) (*repealed by* Pub.L. 103–66, Title XIII § 13611(d)(1)(C) (1993)). Section 1396a(k), also known as the Medicaid qualifying trust statute, prohibited settlor-beneficiaries from sheltering assets in discretionary trusts in order to qualify for Medicaid. *Id.* Under section 1396a(k), the amount "available" to an applicant for purposes of determin-

## II. Background and Facts

To put this case in context, we first discuss the Medicaid program as well as the definition and purpose of disability trusts. Medicaid, formally known as the Medical Assistance Program, was created by Title XIX of the Social Security Act, 42 U.S.C.A. §§ 1396a—1396v (West 2003) (the "Act"). It is a "cooperative federal-state venture designed to afford medical assistance to persons whose income and resources are insufficient to meet the financial demands of necessary care and services." *Ramey*, 268 F.3d at 957 (internal citations omitted).

A person's eligibility for Medicaid is a function of the applicant's countable assets; once the assets exceed the statutory ceiling, the applicant is disqualified from receiving benefits. 42 U.S.C.A. § 1396a(a)(10)(I),(II) (West 2003); *Ramey*, 268 F.3d at 958. Under qualifying circumstances, a disabled applicant with assets in excess of the Medicaid resource limit may place those assets in a trust, and thus exempt them from consideration when determining Medicaid eligibility.[2] 42 U.S.C.A. § 1396p(d)(4)(A) (West 2003). Once established, funds from a disability trust may be used to satisfy the beneficiary's supplemental needs, including the purchase of medical services not available through Medicaid.

States may elect to participate in the Medicaid program. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). However, once they

ing Medicaid eligibility must include the maximum amount permitted under the terms of the trust, and assumes the full exercise of the trustee's discretion to distribute the maximum amount. *Id.; Ramey*, 268 F.3d at 959. In 1993, Congress repealed section 1396a(k) and replaced it with section 1396p(d). 42 U.S.C.A. § 1396p(d) (West 2003). Section 1396p(d) makes it even more difficult for people to use trusts to protect their assets and still qualify for Medicaid benefits. *Ramey*, 268 F.3d at 959. Under section 1396p(d), the trust corpus is counted as a resource and used to determine Medicaid eligibility, regardless of the discretion of the trustee, so long as the trust benefits the individual in some way. 42 U.S.C.A. § 1396p(d). However, like its predecessor, section 1396p(d) still allows the use of trusts to exclude the assets of an individual for the purpose of maintaining Medicaid eligibility if they meet certain criteria. *Id.*

decide to participate, states must comply with the requirements imposed by the Act and by the Secretary of Health and Human Services in order to receive federal funds. *Id.; see also Hern v. Beye,* 57 F.3d 906, 913 (10th Cir.1995) ("[B]ecause Colorado has decided to participate and accept federal Medicaid funds, it must do so on the terms established by Congress.") The Centers for Medicare and Medicaid Services ("CMS") are charged with administering the federal Medicaid program, and the Social Security Administration ("SSA") administers the SSI program.[3] *See Pediatric Specialty Care, Inc. v. Ark. Dept. of Human Servs.,* 364 F.3d 925, 926 (8th Cir.2004); *Graham v. Barnhart,* 278 F.Supp.2d 1251, 1260 (D.Kan.2003).

Through enactment of the Colorado Medical Assistance Act, Colorado elected to participate in the Medicaid program. §§ 26–4–101 to –1408, 8 C.R.S. (2003). Colorado is a so-called section 1634 Medicaid state. Program Operations Manual System ("POMS") § SI 0715.020. Under this section of the Act, the SSA enters into an agreement to make Medicaid eligibility determinations for the state, provided the individual is SSI eligible and meets all Medicaid eligibility requirements. POMS § SI 01730.005. In a 1634 state, an SSI application is also an application for Medicaid. *Id.*

Colorado's Department of Health Care Policy and Financing reviews and must approve all disability trusts, determining whether they comply with federal and state law. *See* § 26–4–104, 8 C.R.S. (2003). At the time Stell submitted his proposed trust for review by the Department, he was receiving Medicaid and SSI benefits due to his disability.

Stell's disability was caused in September 1998 when he suffered catastrophic injuries in a fall at a construction site. As a result of a personal injury claim, Stell received a net settlement of $638,495.58, which was placed in a disability trust.

Upon review, the Department recommended termination of Stell's Medicaid benefits because it objected to two of the trust's provisions: 1) the directive that upon termination of the trust, the payment of funeral, burial, administrative, and tax expenses would precede state Medicaid reimbursement, and 2) the requirement that the Department file a creditor's claim upon termination of the trust. The Boulder Department of Social Services notified Stell that his Medicaid benefits would be terminated because the trust did not meet the legal requirements to exempt the assets held within it for the purpose of determining Medicaid eligibility.

Stell timely appealed the proposed termination of his Medicaid benefits. At the initial hearing, the administrative law judge ("ALJ") determined that the Department's objections to the trust were not well founded, and that the trust was valid pursuant to federal and state law. The ALJ concluded that the trust assets should not be counted for purposes of determining Stell's Medicaid eligibility, and therefore, that his benefits could not be terminated. The Department's Office of Appeals reversed, rejecting the ALJ's interpretation of the statutes. In its final agency action, the Department determined that because Stell's trust provided for payment of other expenses before reimbursing the state for Medicaid benefits, it was invalid.

The district court affirmed the agency's ruling. In doing so, the court held the trust provisions at issue failed to meet the requirements of the governing federal and state laws, and that the Department should receive any amount remaining in the trust upon its termination "without any consideration and with absolute priority."

The court of appeals agreed, interpreting section 15–14–412.8 to prohibit deductions prior to the reimbursement of the state for Medicaid assistance. *Stell,* 78 P.3d at 1145. The court of appeals considered the Department to have the highest priority with respect to the remainder in a disability trust and held that the state must be compensated in full upon termination of the trust prior to any other expenditures. *Id.* To reach this

---

3. SSI is a federal income program created in 1972 that provides cash assistance to the needy and disabled for basic necessities, but not for medical expenses. 42 U.S.C.A. §§ 1381–1385 (West 2003).

conclusion, the court of appeals decided that Colorado's disability trust statute refers to the gross remainder of funds left in the trust upon its termination, and not to the funds left in the trust after the deduction of expenses arising from its administration, including federal and state taxes.[4] *See id.* at 1145–46.

Stell petitioned this court for review of the court of appeals' ruling with regard to the priority of federal and state taxes upon termination of a disability trust.[5] He does not challenge the court of appeals' ruling as to burial and funeral expenses, nor is the issue of whether the Department is required to file a claim against Stell's estate before this court.

Notably in this case, Stell's Medicaid benefits have not been terminated. The United States Court of Appeals for the Tenth Circuit decided in *Ramey* that the Department's practice of independently reviewing the trusts of SSI recipients to determine Medicaid eligibility was invalid, and that SSI recipients are automatically eligible for Medicaid. 268 F.3d at 964. The application of *Ramey* to this case renders Stell, as an SSI recipient, eligible for Medicaid regardless of whether the Department finds his assets are exempted through a disability trust. Because Stell is still receiving Medicaid benefits, the Department has urged that this case is moot. Alternatively, the Department argues the case is not ripe for this court's adjudication because the conflict is contingent on the amount of funds left in the trust upon its termination. The Department filed a motion to dismiss this case before this court based on mootness. We denied the

motion with leave to raise the issue in the briefs and the Department has done so.

### III. Justiciability

The threshold issue in this case is whether this court has the subject matter jurisdiction to hear it. We hold that this case is not moot and that it is ripe for adjudication because we conclude that Stell, as the beneficiary of a disability trust, has the ability to object to the interpretation of a statute that creates inevitable personal liability for his trustee. The fact that Stell is categorically eligible for Medicaid benefits under *Ramey* does not change this result. As a disabled person, Stell continues to need the protection of a trust and the reinstatement of benefits does not resolve the question of priority of payments upon eventual termination of Stell's trust.

When possible, the policy of this court has been to resolve disputes on their merits. *Craig v. Rider,* 651 P.2d 397, 402–03 (Colo. 1982). However, a case is deemed moot when the relief granted by the court would not have a practical effect upon an actual and existing controversy. *Archibold v. Pub. Utils. Comm'n,* 58 P.3d 1031, 1036 (Colo. 2002) (internal quotations omitted).

The doctrine of ripeness additionally requires an injury to be sufficiently immediate and real in order to warrant adjudication. *Beauprez v. Avalos,* 42 P.3d 642, 648 (Colo.2002) (internal citations omitted). In the interest of judicial efficiency, courts will not consider "uncertain or contingent future matters" because the injury is speculative and may never occur.[6] *Id.* In deciding ripe-

4. The court of appeals also rejected two statutes Stell relied upon on appeal as inapplicable to this case. The first, section 15–12–805(1), 5 C.R.S. (2003), sets forth the order in which claims against the estate of a decedent are paid and lists the payment of taxes, funeral and burial expenses as higher in priority than the Department's claims. The second, section 15–12–803, 5 C.R.S. (2003), outlines the limitations on presentation of claims in probate and requires all creditors to file a claim against the estate. The court of appeals held that neither statute applied to disability trust funds because upon Stell's death, they will not be considered part of his estate. *Stell,* 78 P.3d at 1145–46.

5. We granted certiorari on the following issue: Whether the court of appeals erred in holding that a disability trust, within the meaning of § 15–14–412.8, 5 C.R.S. (2003), is not valid for the purpose of establishing or maintaining the beneficiary's resource eligibility for medical assistance because the trust permits the payment of taxes due from the trust upon the death of the beneficiary prior to reimbursement of medical assistance to the state.

6. A court may find a conflict is ripe for judicial review even in the context of uncertain future facts so long as there is no uncertainty regarding the facts relevant to the dispute and no pending actions that might resolve the issue prior to the

ness, courts look to the hardship of the parties of withholding court consideration and the fitness of the issues for judicial decision. *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). To be fit, there must be an adequate record to permit effective review. *Id.*

Upon termination of Stell's trust, one of three scenarios will arise: 1) the trustee will have prepaid the federal and state taxes due, with the remainder of funds going to reimburse the state for medical assistance rendered; 2) the trust will contain assets sufficient to reimburse the state and ·pay any outstanding federal and state taxes owed by the trust; or 3) the trust will owe federal and state taxes, and not contain sufficient funds to both pay those taxes and reimburse the state.

The Internal Revenue Code governs the taxation of trusts, and mandates the payment of taxes by the fiduciary or trustee on trust earnings. 26 U.S.C.A. § 641(b) (West 2003). If a trustee does not pay the taxes due, the trustee then becomes personally liable for the tax. 26 U.S.C.A. § 6901(a)(1)(B) (West 2003).

 It is a basic tenet of trust law that a person may refuse an appointment to act as trustee, or resign the post so long as resignation is not unduly detrimental to the administration of the trust. *In re White,* 506 Pa. 218, 484 A.2d 763, 766 (1984); George T. Bogert, *Trusts* § 31 (6th ed.1987). It also has long been recognized that a court will not permit a properly created trust to fail for want of a trustee. *Jeffreys v. Int'l Trust Co.,* 97 Colo. 188, 195, 48 P.2d 1019, 1022 (1935). If a trustee is named and refuses to act, the court will appoint a trustee to administer an otherwise valid trust. *See id.;* George T. Bogert, *Trusts* § 29.

 We recognize that a beneficiary has both an interest in retaining a trustee to manage the trust's assets, and the ability to object to a statutory interpretation that inevitably exposes his trustee to potential personal liability for unpaid taxes on the trust.

court's determination. *See Beauprez,* 42 P.3d at 648; *Bd. of Educ. v. Booth,* 984 P.2d 639, 644

There is also a public interest in ensuring that the Department has properly interpreted the applicable laws because the courts may be called upon to appoint a trustee for Stell if his trustee resigns due to the threat of personal liability when the trust terminates.

The Department differentiates the final year of the trust from all prior years. Stell's trustee has the ability to pay state and federal taxes prior to reimbursement of the state for medical assistance for every year of the trust's administration except in the year the trust terminates. In that final year, the Department asserts its right to receive reimbursement prior to the trustee's payment of taxes due. Although Stell is now qualified for Medicaid under the Tenth Circuit's decision in *Ramey,* the Department has not surrendered its claim to seek reimbursement from any trust funds remaining after Stell's death. What remains unclear is only whether there will be sufficient funds remaining for the trustee to first fully reimburse the state, and then pay any remaining federal and state taxes due.

Thus, we conclude that this is a live controversy and the case is not moot. Because of the deterrent effect of the court of appeals' construction of the disability trust statute·on trustees, the injury also is not speculative and Stell's case is ripe for review. Finally, the record in this case is well developed, permitting effective review. Therefore, we conclude this court has jurisdiction to decide whether a disability ˙trust is valid when it˙ permits the payment of state and federal taxes prior to the state's reimbursement for medical assistance rendered.

### IV. Standard of Review

 We review the administrative agency's interpretation of section 15–14–412.8 de novo. *See Colo. Dept. of Labor and Employment v. Esser,* 30 P.3d 189, 193 (Colo.2001). The interpretation of a statute or regulation by the agency charged with its administration is ordinarily accorded deference. *Lucero v. Climax Molybdenum Co.,* 732 P.2d 642,

(Colo.1999).

646 (Colo.1987). If it has a reasonable basis in law and is warranted by the record, a court will generally accept an agency's interpretation of the statute or regulation. *Ohlson v. Weil,* 953 P.2d 939, 941 (Colo.App. 1997). However, we will reverse an administrative agency's determination if the agency erroneously interpreted the law. § 24–4–106(7), 7B C.R.S. (2003); *McClellan v. Meyer,* 900 P.2d 24, 29 (Colo.1995).

In this case, we are deciding the validity of a disability trust, which is governed by both federal and state statutes and regulations. As stated above, states are not required to participate in the Medicaid program, but if they choose to do so, they must comply with federal requirements. *Alexander v. Choate,* 469 U.S. 287, 290 n. 1, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Therefore, in construing Colorado's disability trust statute, we must coordinate it to conform to its concomitant federal enactment. *See Ind. Comm'n v. Bd. of County Comm'rs,* 690 P.2d 839, 844 (Colo. 1984) ("[I]f the legislature intends that a state statutory scheme be administered in cooperation with and to conform to a concomitant federal enactment, the courts, in interpreting the state statute, should construe the state and federal statutes together to maintain institutional harmony.").

### V. Analysis

██ Whether federal and state disability trust statutes preclude the payment of accrued income tax from the trust corpus prior to reimbursing the state for medical assistance is a matter of first impression for this court, and we have found no other jurisdiction that has addressed the question. We hold that upon termination, a trustee may pay federal and state taxes due from the corpus of the trust before reimbursing the state for medical assistance it rendered to the beneficiary. This is not a question of conflict preemption; rather, it is a matter of statutory construction.[7] We conclude it is both reasonable and necessary to construe Colorado's disability trust statute to accord with federal and state tax law. In reaching this conclusion, we consider the relevant federal and state laws, as well as applicable administrative guidelines.

In Colorado, the Department administers the Medicaid program, and has the duty to comply with its federal requirements. *See* §§ 26–4–104 to –105, 8 C.R.S. (2003). Under federal law, in order to be eligible for a disability trust, an applicant must comply with three criteria: the trust must 1) contain the assets of an individual under age 65 who is disabled;[8] 2) be established by a parent, grandparent, guardian, or court; and 3) include a provision that the state will be repaid all amounts remaining in the trust up to an amount equal to the total medical assistance paid by the state upon the death of the beneficiary. 42 U.S.C. § 1396p(d).

Colorado's disability trust statute, section 15–14–412.8, mirrors the federal law. A disability trust is not valid unless it is created for the purpose of medical assistance and meets the following criteria: the trust must 1) contain the assets of a disabled individual and be established by the individual's parent, grandparent, guardian, or the court; 2) provide that upon the death of the beneficiary or termination of the trust, the Department receives "any amount remaining in the trust up to the total medical assistance paid on behalf of the individual"; and 3) provide that "no person is entitled to payment from the remainder of the trust until the state medical assistance agency has been fully reimbursed

---

**7.** In *Keith v. Rizzuto,* the United States Court of Appeals for the Tenth Circuit clarified the meaning of conflict preemption in a similar case involving an income trust. 212 F.3d 1190 (10th Cir.2000). The statute at issue in *Rizzuto,* section 15–14–409.7, 5 C.R.S. (1999), provided that only those individuals whose monthly incomes fell short of the average cost of nursing home care in their region, could establish valid income trusts. *Id.* at 1192. Federal law did not include the same sort of income ceiling. *Id.* at 1193. The court held that Colorado's statute was not

preempted because it was possible to comply with both federal and state law. *Id.* at 1193.

**8.** 42 U.S.C.A. § 1382c(a)(3)(A) (West 2003) defines disability; in relevant part, a person is disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

for the assistance rendered to the person for whom the trust was created." § 15–14–412.8(2).

Both the federal enabling act and Colorado's disability trust statute require that, upon termination, the remainder of trust funds be paid to the state as reimbursement up to the total medical assistance paid on behalf of the beneficiary. The crux of the issue in this case is the meaning of the term "remaining" or "remainder." There are two basic interpretive approaches. The term could be interpreted to mean the gross remainder, precluding all deductions, including the payment of state and federal taxes, prior to the state's reimbursement for medical assistance. Alternatively, the term could be read to denote the net remainder, meaning the funds left in the trust after federal and state taxes are deducted.

In this case, the court of appeals adopted the former view, holding that upon termination of a disability trust, section 15–14–412.8 prohibits the deduction of any funds prior to full repayment to the state. Stell argues the court of appeals' interpretation is preempted by federal tax law, and interferes with the purposes and objectives of Congress to collect taxes and provide medical assistance to needy individuals. The Department contends Colorado's disability trust statute comports with federal law, and that preemption analysis does not apply in this case because any conflict that may exist is between the Internal Revenue Code and the federal Medicaid disability trust statute, not between federal and state law.

The language of the federal and state statutes regarding the reimbursement of the state upon termination of a disability trust is nearly identical. Federal section 1396p(d)(4)(A) instructs "the State will receive all amounts remaining in the trust upon the death of [the beneficiary] up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan...." 42 U.S.C. § 1396p(d)(4)(A). Colorado's section 15–14–412.8 similarly states that, upon the trust's termination, the Department receives "any amount remaining in the trust up to the total medical assistance paid on behalf of the individual," and that "no

person is entitled to payment from the remainder of the trust until the state medical assistance agency has been fully reimbursed for the assistance rendered to the person for whom the trust was created." § 15–14–412.8. Neither statute specifies whether the remainder is gross or net.

▮▮▮ A trustee has prior obligations under both federal and state tax law to pay taxes due on trust income. Those taxes must be paid, regardless of whether the state is fully reimbursed for the medical assistance it rendered. If there are not enough funds to both pay taxes and reimburse the state, it is neither reasonable nor equitable to impose personal liability on the trustee of a disability trust for the difference. Therefore, we construe the term "remainder" in section 15–14–412.8 to mean the net remainder, after all taxes due are paid. Our holding, that the payment of taxes must take precedence over reimbursement of the state for medical assistance rendered, harmonizes tax and trust law.

▮▮▮ Our holding is supported by guidelines published by the SSA in its operating manual POMS regarding the priority of payments upon termination of a disability trust. POMS guidelines are the internal operating instructions used by SSA field employees when processing claims for Social Security benefits. POMS guidelines do not have the force and effect of law; they do not bind the Commissioner of Social Security. *Berger v. Apfel,* 200 F.3d 1157, 1161 (8th Cir.2000). However, POMS guidelines may be viewed as binding on an ALJ in a case that falls squarely within one of its provisions. *See Sabo v. Chater,* 955 F.Supp. 1456, 1463 (M.D.Fla.1996).

POMS guidelines expressly permit the deduction of taxes and administrative expenses prior to reimbursing the state for medical assistance made to the individual. POMS § SI 1120.203.B.3.a. The payment of funeral expenses, on the other hand, is subordinate to state reimbursements. POMS § SI 1120.203.B.3.b.

We note that the State Medicaid Manual, published by CMS, the federal agency administering the Medicaid program, does not conflict with the POMS guidelines. The CMS guidelines use the same non-specific

language found in section 1396p(d) and section 15–14–412.8, requiring the trust to "contain a provision stating, that upon the death of the individual, the State receives all amounts remaining in the trust, up to an amount equal to the total amount of medical assistance paid on behalf of the individual...." State Medicaid Manual § 3259.7 (2002). Therefore, the CMS manual provides no additional guidance in resolving the priority of payments upon termination of a disability trust.

The Uniform Probate Code ("UPC"), which Colorado has adopted in relevant part, provides additional support for the SSA's reading of the federal enabling act. Colorado follows the UPC in its outline of the procedures a trustee must follow in making final distributions from a regular trust. § 15–1–406(1)(b)(II)–(III), 5 C.R.S. (2003). After a beneficiary dies, or after an income interest in a trust ends, the remainder beneficiary receives "net income" from the trust. *Id.* Net income is that which arises after taxes and administrative expenses are paid. *Id.*

Our construction of section 15–14–412.8 brings the state disability trust statute into accord with its federal counterpart. It is also supported by sound public policy. With the Social Security Act, Congress intended to provide medical assistance to needy individuals. Enactment of the Internal Revenue Code served to ensure the comprehensive collection of taxes. The court of appeals' interpretation of section 15–14–412.8 erodes both of these purposes; it deters trustees from administering a disability trust by creating an inevitable potential for personal liability, and improperly shifts tax liabilities.

We note that under either party's interpretation of the law, the trust remainder ultimately will end up in the hands of the federal and state government. The difference is only whether the money takes the form of taxes paid or of a reimbursement for medical assistance. In this dispute, the equities do not favor the Department's position. There is no public policy served by leaving the trustee exposed to personal liability for any unpaid taxes upon termination of a disability trust.

If a trustee is able to pay taxes due on a disability trust upon the trust's termination and before reimbursing the state for medical assistance rendered, then the trustee can both satisfy the trust's tax obligations and also complete her service as trustee without risking personal liability for unpaid taxes. Interpreting section 15–14–412.8 to refer to the net remainder of funds aligns tax and trust law in a reasonable and equitable manner, and protects the goals Congress intended to promote through its disability trust scheme.

## VI. Conclusion

Because we hold that upon termination of a disability trust a trustee may pay federal and state taxes due from the trust corpus prior to reimbursement of the state for medical assistance rendered, we conclude that the treatment of taxes in Stell's disability trust is valid and in compliance with applicable federal and state law. Upon termination of the trust, Stell's trustee may pay any taxes due prior to reimbursement of the state, regardless of whether there are trust funds sufficient to cover both the taxes and the full cost of reimbursement. Hence, we reverse the court of appeals' decision in this case, and remand it to the court of appeals for further proceedings consistent with this opinion.